MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
GENEVIEVE K. GUERTIN (State Bar No. 262479)
T. KENNEDY HELM (State Bar No. 282319)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, California  94612
Telephone: (510) 452-5500
Facsimile:   (510) 452-5510

Attorneys for Plaintiffs Laurie DiGiantomasso and Randy DiGiantomasso

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

LAURIE DIGIANTOMASSO and RANDY
DIGIANTOMASSO, Individually and as Co-
Successors in Interest of Decedent SHAYMUS
DIGIANTOMASSO,

          Plaintiffs,

    vs.

TULARE COUNTY, a public entity; TULARE
COUNTY (ACTING) SHERIFF-CORONER
MIKE BOUDREAUX, in his individual and
official capacity; TULARE COUNTY
CLINICAL SOCIAL WORKER ERNIE
CEBALLOS; CORIZON HEALTH, INC., a
Delaware corporation; CORIZON, INC., a
Missouri corporation; CORIZON, LLC, a
Delaware corporation; VALITAS HEALTH
SERVICES, INC., a Delaware corporation;
HAROLD ORR, M.D.; BEATRIZ
CAMBEROS, L.V.N.; KINGS COUNTY, a
public entity; KINGS COUNTY SHERIFF-
CORONER DAVID ROBINSON, in his
individual and official capacity; KINGS
COUNTY SHERIFF'S COMMANDER KIM
PEDREIRO, in her individual and official
capacity; KINGS COUNTY SHERIFF'S
SERGEANT SHERRI HENDERSON;
CALIFORNIA FORENSIC MEDICAL
GROUP, INCORPORATED, a California

No:  1:14-cv-01633-GSA

**FIRST AMENDED COMPLAINT
FOR DAMAGES,
DECLARATORY, AND
INJUNCTIVE RELIEF, AND
DEMAND FOR JURY TRIAL**

1  corporation; TAYLOR FITHIAN, M.D.;
   MEGAN NABORS, L.V.N; DANIELLE
2  ECKER; LINDA WEESNER, R.N.;
   MINNETTA COSTA, R.N.; JANA CEARLEY,
3  L.P.T., and DOES 1–20, individually, jointly,
   and severally,
4

5          Defendants.

6

7          Plaintiffs, by and through their attorneys, HADDAD & SHERWIN, for their Complaint

8  against Defendants, state as follows:

9                                    **JURISDICTION**

10         1.      This is a civil rights, wrongful death, and survival action arising from Defendants'

11 failure both to provide for Decedent's serious medical needs and to provide competent medical care,

12 treatment, and suicide precautions, and failure to comply with legal obligations concerning

13 Decedent's serious medical needs, which occurred in both Tulare County and Kings County and

14 resulted in the death of SHAYMUS DIGIANTOMASSO ("SHAYMUS") by suicide on or about

15 December 6, 2013.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988; the First,

16 Fourth, and Fourteenth Amendments to the United States Constitution; the Americans with

17 Disabilities Act ("ADA") Title II (42 U.S.C. §§ 12131 et seq.) and Title III (42 U.S.C. §§ 12181 et

18 seq.); and the Rehabilitation Act ("RA") (29 U.S.C. § 794 et seq.).  Jurisdiction is founded upon 28

19 U.S.C. §§ 1331 and 1343(a)(3) and (4), and the above-mentioned statutory and constitutional

20 provisions.  Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28

21 U.S.C. § 1367, to hear and decide claims arising under state law.

22

23                              **INTRADISTRICT ASSIGNMENT**

24         2.      A substantial part of the events and/or omissions complained of herein occurred in

25 both Tulare County and Kings County, California, and, pursuant to Local Rule 120(d), this action is

26 properly assigned to the Fresno Division of the United States District Court for the Eastern District

of California.

## PARTIES AND PROCEDURE

3.      Plaintiff LAURIE DIGIANTOMASSO is the mother of Decedent SHAYMUS DIGIANTOMASSO and a resident of the State of Arizona.  Plaintiff LAURIE DIGIANTOMASSO brings these claims individually and as co-successor in interest for Decedent SHAYMUS DIGIANTOMASSO.

4.      Plaintiff RANDY DIGIANTOMASSO is the father of Decedent SHAYMUS DIGIANTOMASSO and a resident of the State of Arizona.  Plaintiff RANDY DIGIANTOMASSO brings these claims individually and as co-successor in interest for Decedent SHAYMUS DIGIANTOMASSO.

5.      Plaintiffs bring these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions.  Plaintiffs also bring their claims individually and on behalf of Decedent SHAYMUS DIGIANTOMASSO on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, the ADA and RA, and federal and state civil rights law.  Plaintiffs also bring these claims as Private Attorneys General, to vindicate not only their rights, but others' civil rights of great importance.

6.      Defendant TULARE COUNTY is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs and controls the TULARE COUNTY SHERIFF'S DEPARTMENT, also a public entity, and employs other defendants in this action.  Under California Government Code § 815.2, Defendant TULARE COUNTY is vicariously liable for the state law torts of its employees and agents, including but not limited to those named as Defendants herein.

7.      Defendant SHERIFF-CORONER MIKE BOUDREAUX ("BOUDREAUX"), at all times mentioned herein, was employed by Defendant TULARE COUNTY as (Acting) Sheriff-

Coroner for TULARE COUNTY, and was acting within the course and scope of that employment. As Sheriff-Coroner, Defendant BOUDREAUX was the final policy-making official for the TULARE COUNTY jails, ultimately responsible for all policies, procedures, and training at the jails.  He is being sued in his individual and official capacities as Sheriff-Coroner for TULARE COUNTY.  At all material times, Defendant BOUDREAUX was a policy-making official for Defendant TULARE COUNTY.

8.      Defendant ERNIE CEBALLOS ("CEBALLOS"), at all times mentioned herein, was employed by Defendant TULARE COUNTY as a Clinical Social Worker (CSW) and was acting within the course and scope of that employment.

9.      Defendant CORIZON HEALTH, INC. was at all material times a Delaware corporation engaged in interstate commerce and licensed to do business in California.  Defendant CORIZON, INC., was at all material times a Missouri corporation engaged in interstate commerce and licensed to do business in California.  Defendant CORIZON, LLC, was at all material times a Missouri corporation engage in interstate commerce.  Defendant VALITAS HEALTH SERVICES, INC., was at all material times a Delaware corporation engaged in interstate commerce.  Defendants CORIZON HEALTH, INC., CORIZON, INC., and CORIZON, LLC, are wholly owned subsidiaries of Defendant VALITAS HEALTH SERVICES, INC.  Plaintiffs are informed and believe and thereon allege that, at all material times, Defendants CORIZON HEALTH, INC., CORIZON, INC., CORIZON, LLC, and VALITAS HEALTH SERVICES, INC., are and were alter egos, joint venturers, and engaged in the single "CORIZON" enterprise, using the same office locations, headquarters, officers, directors, website, policies, training, Word Marked logo, marketing materials, funding, and using the contracts of each of them to obtain further contracts for each of them, and shall hereinafter jointly be called "CORIZON."  The CORIZON Defendants hold themselves out to the public as one CORIZON "brand" and enterprise.  The CORIZON Defendants

provided medical and nursing care to inmates and detainees in TULARE COUNTY jails, pursuant to contract with TULARE COUNTY.  On information and belief, the CORIZON Defendants and their employee and agent Defendant HAROLD ORR, M.D., are responsible for making and enforcing policies, procedures, and training related to the medical and mental health care of prisoners and detainees in Defendant TULARE COUNTY's jails, including: assessing inmates for possible suicide risk; instituting appropriate suicide precautions; and communicating suicide risk to custodial staff, health care professionals, and outside facilities, including to another facility in the event that an inmate at risk of committing suicide is transferred to another facility.

10.     Defendant HAROLD ORR, M.D., ("ORR") was at all times herein mentioned a physician licensed to practice medicine in the State of California and an employee and/or agent of Defendant CORIZON HEALTH, INC., and the other CORIZON Defendants, working as the medical director of Defendant TULARE COUNTY's jails and Regional Medical Director for CORIZON's facilities in California and Oregon.  ORR was responsible for overseeing and providing medical care to prisoners and detainees, and for instituting appropriate policies, procedures, and training concerning suicide-risk assessment and prevention protocols, and was acting within the course and scope of that employment.  On information and belief, Defendant ORR was ultimately responsible for CORIZON's provision of medical care to inmates at the jail, including assessing inmates for possible suicide risk, instituting appropriate suicide-prevention programs, and, where inmates were transferred to other facilities, communicating suicide-risk information to those facilities.  At all material times, Defendant ORR was a policy-making official for Defendant CORIZON HEALTH, INC., and the other CORIZON Defendants.

11.     Defendant BEATRIZ CAMBEROS, L.V.N. ("CAMBEROS") was at all times herein mentioned employed by Defendant CORIZON HEALTH, INC., and the other CORIZON Defendants, as a Licensed Vocational Nurse in Defendant TULARE COUNTY's jails, and was

acting within the course and scope of that employment.  Defendant CAMBEROS performed the

intake medical and psychiatric assessment on SHAYMUS DIGIANTOMASSO when he was

booked into TULARE COUNTY jail, and, on information and belief, did so without a Registered

Nurse's clinical supervision.

12.     Defendant KINGS COUNTY is a public entity established by the laws and

Constitution of the State of California, and owns, operates, manages, directs and controls the

KINGS COUNTY SHERIFF'S DEPARTMENT, also a public entity, and employs other

Defendants in this action.  Under California Government Code § 815.2, Defendant KINGS

COUNTY is vicariously liable for the state law torts of its employees and agents, including but not

limited to those named as Defendants herein.

13.     Defendant SHERIFF-CORONER DAVID ROBINSON ("ROBINSON"), at all times

mentioned herein, was employed by Defendant KINGS COUNTY as Sheriff-Coroner for the

COUNTY, and was acting within the course and scope of that employment.  As Sheriff-Coroner,

Defendant ROBINSON was the final policy-making official for the KINGS COUNTY jails, and

was ultimately responsible for all policies, procedures, and training at the jails.  He is being sued in

his individual and official capacities as Sheriff-Coroner for KINGS COUNTY.  At all material

times, Defendant ROBINSON was a policy-making official for Defendant KINGS COUNTY.

14.     Defendant COMMANDER KIMBERLY PEDREIRO ("PEDREIRO"), at all times

mentioned herein, was employed by Defendant KINGS COUNTY as the Commander of the

KINGS COUNTY Main Jail.  Upon information and belief, PEDREIRO was a person to whom

Sheriff-Coroner ROBINSON delegated authority over policies, procedures, and training at the jail.

She is being sued in her individual and official capacities.

15.     Defendant SERGEANT SHERRI HENDERSON ("HENDERSON"), at all times

mentioned herein, was employed by Defendant KINGS COUNTY, and she was acting within the

course and scope of that employment.  Defendant HENDERSON was responsible for SHAYMUS DIGIANTOMASSO's booking and classification.

16.     Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, ("CFMG") was, at all material times, a California corporation licensed to do business in California. Defendant KINGS COUNTY contracted with Defendant CFMG for the provision of medical and mental health care in KINGS COUNTY'S jail, juvenile hall, and boot camp.  Defendant CFMG provided medical, mental health, and nursing care to inmates and detainees in KINGS COUNTY jail, pursuant to contract with KINGS COUNTY.  On information and belief, CFMG and its President, officer, director, employee and managing agent Defendant TAYLOR FITHIAN, M.D., are responsible for making and enforcing policies, procedures, and training related to the medical and mental health care of prisoners and detainees in Defendant KINGS COUNTY's jail, including: assessing inmates for possible suicide risk; instituting appropriate suicide precautions; approving housing classification; and communicating about an inmate's suicide risk with custodial staff, health care professionals, and outside facilities, including communicating with another facility concerning an inmate's serious medical needs in the event that an inmate has been transferred to KINGS COUNTY jail from another facility.

17.     Defendant TAYLOR FITHIAN, M.D., ("FITHIAN") was at all times herein mentioned a physician licensed to practice medicine in the State of California, a Board certified psychiatrist, and an officer, director, managing agent, employee and/or agent of Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED ("CFMG"), working as the medical director of Defendant KINGS COUNTY's jail.  FITHIAN was responsible for overseeing and providing medical and mental health care to prisoners and detainees, and for instituting appropriate policies, procedures, and training concerning suicide-risk assessment and prevention protocols, and was acting within the course and scope of that employment.  On information and

belief, Defendant FITHIAN was ultimately responsible for CFMG's provision of medical care to inmates at the jail, including assessing inmates for possible suicide risk, instituting appropriate suicide-prevention programs, and, where inmates were transferred from other facilities, obtaining suicide-risk information from those facilities.  At all material times, Defendant FITHIAN was the highest policy-making official for Defendant CFMG.

18.     Furthermore, Defendant FITHIAN was at all times responsible for the medical and psychiatric care provided to SHAYMUS DIGIANTOMASSO at KINGS COUNTY jail, and for making sure that SHAYMUS DIGIANTOMASSO was placed on appropriate suicide precautions or transferred for inpatient psychiatric care.

19.     In addition, Defendant FITHIAN was at all times responsible for staffing the CFMG medical and psychiatric services at KINGS COUNTY jail, including but not limited to making sure that only properly licensed and credentialed health care providers provide care, and that no provider work outside his or her scope of practice or licensure.

20.     Defendant MEGAN NABORS, L.V.N. ("NABORS") was at all times herein mentioned employed by Defendants CFMG and FITHIAN, as a Licensed Vocational Nurse in Defendant KINGS COUNTY's jail, and was acting within the course and scope of that employment.  Defendant NABORS performed the intake medical and psychiatric assessment on SHAYMUS DIGIANTOMASSO – including but not limited to the Nursing Assessment of Psychiatric & Suicidal Inmate, and the Booking Request Medical Form -- when he was booked into KINGS COUNTY'S jail, and, performed other nursing tasks that were not within her scope of practice as an LVN.  Furthermore, on information and belief, Ms. Nabors did so without a Registered Nurse's clinical supervision.

21.     Defendant DANIELLE ECKER, at all times mentioned herein, was employed by Defendants CFMG and FITHIAN, working in Defendant KINGS COUNTY'S jail, and she was

acting within the course and scope of that employment. Plaintiffs are informed and believe, and thereon allege, that Defendant ECKER was licensed by the State of California only as a Marriage and Family Therapist Intern, and she was not qualified, under California law and/or nationally accepted standards, to perform an unsupervised suicide-risk assessment or to act independently as a mental health care provider without supervision by a licensed health care provider as required by California law and the California Code of Regulations. Plaintiffs are informed and believe and thereon allege that Defendants CFMG, FITHIAN, and other DOE Defendants allowed Defendant ECKER to work without the required clinical supervision.

22.     Defendant LINDA WEESNER, R.N, at all times mentioned herein, was employed by Defendants CFMG and FITHIAN, working in Defendant KINGS COUNTY'S jail, and she was acting within the course and scope of that employment.

23.     Defendant MINNETTA COSTA, R.N., at all times mentioned herein, was employed by Defendants CFMG and FITHIAN, working in Defendant KINGS COUNTY'S jail, and she was acting within the course and scope of that employment.

24.     Defendant JANA CEARLEY, L.P.T., at all times mentioned herein, was employed by Defendants CFMG and FITHIAN, working in Defendant KINGS COUNTY'S jail as a licensed Psychiatric Technician, and she was acting within the course and scope of that employment.

25.     The true names and capacities of Defendants sued herein as DOES 1–20 ("DOE Defendants") are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names, and Plaintiffs will seek leave to amend this complaint to show their true names and capacities when the same are ascertained. Each DOE Defendant was an employee/agent of TULARE COUNTY, KINGS COUNTY, CORIZON, or CFMG, and at all material times acted within the course and scope of that relationship. Defendants have refused to provide complete records concerning SHAYMUS DIGIANTOMASSO, which would reveal the names and capacities

of DOE Defendants.  Plaintiffs are informed and believe and thereon allege that each Defendant so named was negligently, wrongfully, or otherwise responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein.  Further, one or more DOE Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other Defendants, including DOE Defendants.

26.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.  Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged.  At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' constitutional rights and other harm.

27.     The acts and omissions of all DOE DEFENDANTS as set forth herein were at all material times pursuant to the actual customs, policies, practices and procedures of TULARE COUNTY, KINGS COUNTY, CORIZON, and/or CFMG.

28.     At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California and the United States.

29.     Each Plaintiff timely and properly filed tort claims pursuant to California Government Code §§ 910 et seq., and this action is timely filed within all applicable statutes of limitation.

30.     This complaint may be pled in the alternative pursuant to Federal Rule of Civil

1  Procedure 8(d).

2  **GENERAL ALLEGATIONS**

3      31.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth

4  here.

5      32.    SHAYMUS DIGIANTOMASSO ("SHAYMUS") was twenty-one years old (born

6  February 22, 1992) when he died, and he had a history of mental illness and attempted suicide.  At

7  all material times, SHAYMUS DIGIANTOMASSO was peaceful, nonviolent, and never presented

8  any threat to others.  At the time of his death, he was a civilian employee of TULARE COUNTY,

9  working at its jail as a detention officer.    Plaintiffs' claims did not and do not arise out of the

10  course and scope of SHAYMUS DIGIANTOMASSO's employment with TULARE COUNTY, and

11  Plaintiffs' claims are not dependent upon any collective bargaining agreement or subject to any

12  exclusive remedy provisions of the California Worker's Compensation Act, and are not otherwise

13  preempted or barred.

14      33.    On or about November 23, 2013, SHAYMUS DIGIANTOMASSO took 100

15  Klonopin pills and drank alcohol in a suicide attempt.  The TULARE COUNTY Sheriff's Office

16  arranged for SHAYMUS' transport by ambulance to Kaweah Delta Medical Center, where he

17  received a mental health crisis intervention and evaluation by TULARE COUNTY Clinical Social

18  Worker, Defendant ERNIE CEBALLOS, on or about November 24, 2013.  CEBALLOS was

19  informed of SHAYMUS' suicide attempt and attempted drug overdose.  CEBALLOS noted that

20  SHAYMUS reported depression and was positive for alcohol, and CEBALLOS researched

21  SHAYMUS' mental health history.  CEBALLOS decided to release SHAYMUS

22  DIGIANTOMASSO to his roommate.

23      34.    At approximately 11:00 p.m. on or about December 1, 2013, TULARE COUNTY

1    Sheriff's Office deputies were again called to SHAYMUS DIGIANTOMASSO's home, having

2    received a report that a "suicidal subject" [SHAYMUS DIGIANTOMASSO] had overdosed on

3    pills.  During this second incident, TULARE COUNTY Sheriff's Office deputies asked SHAYMUS

4    DIGIANTOMASSO if they could see his pills; he brought the deputies to his bedroom and opened

5    a safe containing the medications.  In that safe was also a detonation cord which SHAYMUS

6    DIGIANTOMASSO had received from a friend of his who worked as a TULARE COUNTY

7    Sheriff's Deputy.

8

9        35.    On or about the early morning of December 2, 2013, TULARE COUNTY Sheriff's

10   Office Deputies brought SHAYMUS DIGIANTOMASSO to Kaweah Delta Medical Center

11   because of SHAYMUS' suicide attempt.  DEFENDANT CEBALLOS again evaluated SHAYMUS

12   DIGIANTOMASSO, at approximately 8:30 a.m. on December 2, 2013.  Even though this was

13   SHAYMUS DIGIANTOMASSO'S second suicide attempt in 8 days, Defendant CEBALLOS

14   decided that SHAYMUS' risk for harm was low, and discharged SHAYMUS DIGIANTOMASSO

15   with an agreement that SHAYMUS would voluntarily go to the Veteran's Administration (V.A.)

16   Hospital in Fresno.

17

18       36.    Hours later, at approximately 3:00 p.m. on December 2, 2013, Defendant

19   CEBALLOS was called to evaluate SHAYMUS DIGIANTOMASSO a third time, in a Savemart

20   parking lot.  The plan was to place SHAYMUS at "KDMH Dr. Aking."

21

22       37.    Despite Plaintiffs' repeated requests for SHAYMUS DIGIANTOMASSO'S medical

23   records from Kaweah Delta Health Care District, with a release complying with the Health

24   Information Portability and Accountability Act ("HIPAA"), the Kaweah Delta Health Care District

25   has refused to produce SHAYMUS DIGIANTOMASSO'S records.  Plaintiffs reserve the right to

26   amend this complaint after receiving the records.

27       38.    Upon information and belief, at no time did Defendant CEBALLOS arrange for

28

Case No. 1:14-cv-01633-GSA:  FIRST AMENDED COMPLAINT AND JURY DEMAND            12

inpatient mental health care for SHAYMUS DIGIANTOMASSO, request a transfer to the V.A. Medical Center inpatient psychiatric unit, or otherwise provide for SHAYMUS DIGIANTOMASSO'S serious medical needs. Defendant CEBALLOS failed to properly assess and respond to SHAYMUS DIGIANTOMASSO'S serious medical and psychiatric needs, and he was deliberately indifferent to SHAYMUS DIGIANTOMASSO'S serious medical and psychiatric needs.

39.     On or about December 5, 2013, TULARE COUNTY Sheriff's deputy Webb arrested SHAYMUS DIGIANTOMASSO for possessing the detonation cord. Defendant TULARE COUNTY contracts its correctional healthcare to Defendant CORIZON HEALTH, INC., which is a joint venturer with and alter ego of the other CORIZON Defendants. However, TULARE COUNTY retains the non-delegable duty to provide competent and appropriate medical care and to provide for the serious medical needs of its jail inmates.

40.     CORIZON employee BEATRIZ CAMBEROS, a Licensed Vocational Nurse (L.V.N.), performed the intake medical assessment on SHAYMUS DIGIANTOMASSO. On information and belief, CAMBEROS performed the intake assessment without any clinical supervision from a registered nurse (R.N.), in violation of California law and state and national standards.

41.     On information and belief, CORIZON allows un-credentialed L.V.N.s to work outside their scope of practice and to perform intake medical assessments on jail inmates, without appropriate clinical supervision by Registered Nurses or physicians.

42.     DEFENDANT CAMBEROS noted that SHAYMUS DIGIANTOMASSO visited the Emergency Room on or about December 3, 2013 for a "5150" (California Welfare & Institutions Code § 5150) emergency psychiatric evaluation. CAMBEROS noted that SHAYMUS DIGIANTOMASSO reported he had been to a hospital Emergency Room "two days ago" for

"5150" [emergency psychiatric hospitalization]; he had current mental health complaints; he had a history of mental health problems including major depression and panic disorder; he had a history of outpatient therapy; he had a history of suicide attempts with the most recent attempt "last week"; he had friends/family with a history of suicide; and he felt like there was nothing to look forward to, feeling hopeless/helpless.  CAMBEROS noted at the bottom of the last page of the intake form that "[p]er Sgt., Pt will be transferred to Kings County."  On or about December 5, 2013, SHAYMUS DIGIANTOMASSO was transferred to KINGS COUNTY jail.

      43.     Neither CAMBEROS nor any other employee of TULARE COUNTY or CORIZON obtained any mental health evaluation of SHAYMUS DIGIANTOMASSO, or requested his transfer to an inpatient psychiatric facility, after his arrest on or about December 5, 2013.

      44.     On information and belief, no employee or agent of either CORIZON or TULARE COUNTY informed KINGS COUNTY or CFMG of SHAYMUS DIGIANTOMASSO's risk of suicide or his two recent suicide attempts within 8 days.

      45.     KINGS COUNTY jail employees, including, but not limited to, on information and belief, DEFENDANT HENDERSON and other DOE Defendants, booked SHAYMUS DIGIANTOMASSO into the KINGS COUNTY jail.  SHAYMUS DIGIANTOMASSO was a pretrial detainee.  KINGS COUNTY jail personnel knew and/or must have known that SHAYMUS DIGIANTOMASSO posed a suicide risk.  The Initial Custody Assessment Scale form completed by a DOE Defendant identified SHAYMUS DIGIANTOMASSO'S "Mental Deficiency" as "DEEMED 5150 1 WK AGO BY [TULARE COUNTY] MENTAL HEALTH/KAWEAH DELTA" and stated that "Yes" SHAYMUS was a suicide risk, "1 WEEK AGO ATTEMPT TO OD ON PILLS."

      46.     The KINGS COUNTY Inmate Pre-Screening Form also acknowledged that SHAYMUS DIGIANTOMASSO reported "mental health" problems.  In apparent contravention of

the Pre-Screening Form's instructions, the KINGS COUNTY DOE Defendant who completed the Pre-Screening Form did not print his or her name and ID number.

47.     In addition, Defendant KINGS COUNTY had its own non-delegable duty to provide for the serious medical needs of SHAYMUS DIGIANTOMASSO, including providing him with a complete receiving medical screening and mental health screening for his suicide risk, and instituting appropriate suicide precautions, and failed to do so.

48.     Defendant KINGS COUNTY, its employees and agents, including DOE DEFENDANTS, knew or must have known that SHAYMUS DIGIANTOMASSO was at risk of committing suicide, and failed to institute appropriate suicide precautions for him, which should have included, for example, but not been limited to: either transferring him to an acute psychiatric facility or keeping him under constant observation while he was in an isolated cell or actively suicidal; checking him at irregular intervals twice every thirty minutes otherwise while he was at risk of suicide; and providing him with a safety smock and appropriate housing and bedding, among other precautions.

49.     While Defendant KINGS COUNTY contracts its correctional healthcare and mental health care to Defendants CFMG and FITHIAN, KINGS COUNTY retains the non-delegable duty to provide competent and appropriate medical care and to provide for the serious medical needs of its jail inmates.

50.     CFMG's and FITHIAN'S employee MEGAN NABORS, a Licensed Vocational Nurse (L.V.N.), performed the intake medical and mental health assessment on SHAYMUS DIGIANTOMASSO.  On information and belief, NABORS performed the intake assessment without any clinical supervision from a registered nurse (R.N.), in violation of California law and state and national standards.

51.     On information and belief, CFMG and FITHIAN allow un-credentialed L.V.N.s to

work outside their scope of practice and to perform intake medical and mental health assessments on jail inmates, without appropriate clinical supervision by Registered Nurses or physicians.

52.     On or about December 5, 2013, at 1:40 p.m., Defendant MEGAN NABORS, L.V.N., performed the "Nursing Assessment of Psychiatric & Suicidal Inmate" on SHAYMUS.  Ms. Nabors was working outside her legal scope of practice, performing work that requires a Registered Nurse's license or above.

53.     Defendant NABORS noted that SHAYMUS DIGIANTOMASSO, was "depressed/tearful;" was under the care of a psychiatrist for major depression and panic disorder; had past suicidal ideation; had a past suicide attempt one week ago by "overdose on pills;" was "5150 at Kaweah Delta, just released."  Defendant NABORS also reviewed and signed the "Booking Request Medical Form," which stated that SHAYMUS DIGIANTOMASSO had a recent hospitalization in the last 72 hours for being "5150" (a reference to Welfare and Institutions Code § 5150, providing for the emergency psychiatric hospitalization of persons who are a danger to themselves or others, or gravely disabled); he was under a doctor's care for psychiatric reasons, had a history of mental health issues, and had attempted suicide by overdosing on pills.

54.     Defendant NABORS failed to institute suicide precautions or place SHAYMUS on suicide watch.  Instead, she cleared him for housing in the general jail population.

55.     On or about December 5, 2013, at 1:55 p.m., Defendant JANA CEARLEY noted that she spoke with Defendant TAYLOR FITHIAN, M.D., who issued a verbal prescription for Vistaril 25 mg as needed for agitation every 6 hours, not to exceed four doses in a 24 hour period, for five days.

56.     At no time either before or after this order did Defendant TAYLOR FITHIAN, M.D., ever examine, evaluate, assess, diagnose, treat, or provide – or arrange for the provision of -- necessary medical care to SHAYMUS DIGIANTOMASSO.

57.     Defendant JANA CEARLEY then saw SHAYMUS on or about December, 5, 2013, charting the visit at 2:20 p.m.  Defendant Cearley's note indicates that SHAYMUS overdosed two weeks ago with intent to die, reached out for help and was hospitalized at Kaweah Delta medical center for 72 hours under Cal. Welf. & Inst. Code § 5150.  Defendant  CEARLEY noted that SHAYMUS was crying off and on, reported feeling shame, sadness, and hopelessness, had major depression by history with a suicide attempt and 5150 hospitalization.

58.     Defendant CEARLEY consulted with Defendant PEDREIRO who decided to house SHAYMUS in the booking area away from other inmates where he "can be closely observed." Defendant CEARLEY noted that mental health "will follow very closely due to multiple high risk factors[,] no current suicidal ideation but will need close monitoring for any changes to mental state."

59.     On or about December 5, 2013, at 3:09 p.m., Defendant CEARLEY sent an email to Defendants DANIELLE ECKER, LINDA WEESNER, R.N., and MINNETTA COSTA R.N., concerning SHAYMUS DIGIANTOMASSO, with the subject "New inmate high risk."  Defendant CEARLEY informed Defendants ECKER, WEESNER, and COSTA that SHAYMUS DIGIANTOMASSO had a history of depression, was seeing a private psychiatrist, was taking Zoloft and felt it made him suicidal, and he overdosed two weeks ago with the intent to die and was taken to the hospital for a 72 hour "5150" emergency psychiatric stay.  Defendant CEARLEY reported that SHAYMUS was to see his psychiatrist on December 5 but was arrested instead, and he was experiencing "lots of shame, hopelessness etc" but denied current suicidal ideation, plan or intent.  Defendant CEARLEY noted SHAYMUS' "biggest thing current is being 'on the other side' (inmate)."  Defendant CEARLEY noted that while Defendant PEDREIRO decided to house SHAYMUS in the booking area 1) to be away from other inmates, and 2) because KINGS COUNTY custody staff could "observe him frequently there" SHAYMUS was "Not on suicide

watch."

60.     Neither Defendant NABORS, CEARLEY, WEESNER, COSTA, ECKER, FITHIAN, nor any other Defendant provided care for SHAYMUS DIGIANTOMASSO'S serious medical needs, including suicide prevention and mental health treatment.

61.     In violation of California law and generally accepted standards for suicide prevention in jails, Defendants KINGS COUNTY, PEDREIRO, CFMG, FITHIAN, NABORS, CEARLEY, WEESNER, COSTA, ECKER, and all other Defendants working at the KINGS COUNTY jail failed to put SHAYMUS on suicide watch, place him under constant observation, provide him irregular visual checks twice every thirty minutes, provide him with suicide prevention bedding or a safety smock, or otherwise provide for his serious medical needs.

62.     On or about Friday, December 6, 2013, at 8:20 a.m. Defendant DANIELLE ECKER, a marriage and family therapist intern, saw SHAYMUS, who was tearful and reported continuing to have a hard time due to not seeing himself "on this side" [as an inmate rather than a detention officer].  SHAYMUS expressed concern about being around other inmates and about them being able to look in his window or knock on his door.  Defendant ECKER knew or must have known both that SHAYMUS DIGIANTOMASSO was trying to be housed in a cell away from other inmates so that he could commit suicide and that SHAYMUS DIGIANTOMASSO posed a risk of suicide.

63.     SHAYMUS is reported to have informed Defendant ECKER he hoped to get released on his own recognizance on December 6, 2013.  Despite SHAYMUS' documented history of recent suicide attempts and major depression, feeling helpless/hopeless, Defendants KINGS COUNTY and CFMG and their employees and agents noting that SHAYMUS was at risk of suicide, Defendants ECKER and KINGS COUNTY SGT. HENDERSON, decided that SHAYMUS would be placed in an isolation cell when he returned from court later that day, and that SHAYMUS

"would be willing to give it a try."  Defendant ECKER told SHAYMUS that the jail's mental-health personnel would follow up with him on a regular basis, but, on information and belief, no mental-health professional ever did follow up with him.

64.     Despite SHAYMUS DIGIANTOMASSO's risk of suicide, Defendant ECKER further decided that SHAYMUS would receive nursing checks every shift and not have a mental health followup until Monday, December 9, 2013.  Defendants KINGS COUNTY, CFMG, FITHIAN, and DOE Defendants allowed Defendant ECKER to make these life-and-death decisions on her own, without any clinical supervision.

65.     On or about December 6, 2013, at about 9:00 a.m., Defendant HENDERSON was informed by mental health staff, including but not limited to Defendant ECKER, that SHAYMUS DIGIANTOMASSO had said that if he was housed with other inmates he would hurt himself. Defendant HENDERSON knew or must have known that SHAYMUS DIGIANTOMASSO was at risk of committing suicide.  Upon information and belief, Defendant HENDERSON did nothing in response to this information, allowing SHAYMUS to be placed in an isolation cell upon his return from court.

66.     On or about December 6, 2013, at 10:17 a.m., SHAYMUS DIGIANTOMASSO was removed from his cell in the booking area and taken to court, where his request to be released on his own recognizance was denied.

67.     On or about December 6, 2013, at 10:35 a.m., Defendant FITHIAN gave a telephone order to Defendant MEGAN NABORS, L.V.N., that SHAYMUS DIGIANTOMASSO would receive nursing welfare checks every shift for three days.  With deliberate indifference to SHAYMUS' serious medical needs, Defendant FITHIAN never examined SHAYMUS or ordered any other physician or properly credentialed licensed health care provider to examine SHAYMUS.

68.     Defendant FITHIAN is a Board Certified psychiatrist, should be well aware of the standards and requirements for suicide risk assessment and suicide prevention in jails, and still failed to provide for SHAYMUS DIGIANTOMASSO's serious medical needs, including the need for competent suicide risk assessment and suicide prevention.

69.     Defendant FITHIAN knew or must have known that no suicidal inmate should ever be placed in an isolation cell with no observation.  Defendant FITHIAN was the highest policymaking official for Defendant CFMG, and with deliberate indifference to the rights of SHAYMUS DIGIANTOMASSO and others, failed to institute appropriate suicide prevention policies, procedures, and training, and further failed to hire properly credentialed staff, to supervise them, and to make sure they do not work outside their legal scope of practice.

70.     Upon his return to KINGS COUNTY jail, on or about December 6, 2013, at about 3:00 p.m., unidentified jail personnel assigned SHAYMUS DIGIANTOMASSO to Secured Housing Unit (SHU) B6-pod, cell 80, which is a segregated, isolated, non-suicide-watch cell.  The KINGS COUNTY and CFMG Defendants, including DOE Defendants, failed to observe SHAYMUS DIGIANTOMASSO as required by generally accepted state and national standards concerning observation of inmates at risk of suicide, and failed to take any appropriate precautions to prevent his suicide.

71.     SHAYMUS did not even receive the nursing welfare checks that Defendant FITHIAN had ordered.

72.     Defendants KINGS COUNTY, COMMANDER PEDREIRO, SGT. HENDERSON, CFMG, FITHIAN, NABORS, CEARLEY, ECKER and DOE Defendants decided to house SHAYMUS DIGIANTOMASSO first in a general population cell on December 5, 2013, and then in an isolation cell upon his return from court on December 6, 2013, and at all times with no suicide precautions.  Each of these Defendants must have known that placing SHAYMUS, a nonthreatening

1    person at high risk of suicide, into an isolated, segregated cell greatly increased his risk of suicide.

2        73.    In addition, Plaintiffs are informed and believe, and thereon allege, that Defendants

3    KINGS COUNTY, COMMANDER PEDREIRO, SGT. HENDERSON, CFMG, FITHIAN, and

4    DOE Defendants, failed to have an appropriate suicide-prevention program, policies, training, or

5    procedures in place.

6        74.    Defendants TULARE COUNTY and KINGS COUNTY refused to provide

7    SHAYMUS DIGIANTOMASSO's complete records in response to Plaintiffs' proper requests for

8    them, and Plaintiffs reserve the right to amend this Complaint with further allegations after

9    Defendants produce records in this matter.  Defendant KINGS COUNTY never informed Plaintiffs

10   that it had contracted with CFMG to provide the medical and mental health care for jail inmates.

11   After Defendant KINGS COUNTY was served with the Complaint in this matter, Defendant CFMG

12   first provided SHAYMUS' medical records to Plaintiffs on November 4, 2014.

13       75.    Plaintiffs are informed and believe and thereon allege that Defendants TULARE

14   COUNTY, KINGS COUNTY, CORIZON, ORR, CFMG, FITHIAN, BOUDREAUX, ROBINSON,

15   and PEDREIRO deliberately indifferently failed to train their employees to recognize the risk of

16   suicide and to prevent suicide, even in the face of an obvious need for such training.

17       76.    Plaintiffs are informed and believe and thereon allege that Defendants TULARE

18   COUNTY, KINGS COUNTY, CORIZON, ORR, CFMG, FITHIAN, BOUDREAUX, ROBINSON,

19   and PEDREIRO failed to have a qualified mental health professional conduct mental health

20   evaluations on inmate patients, with deliberate indifference to the inmate patients' serious medical

21   and mental health needs.

22       77.    Plaintiffs are informed and believe and thereon allege that Defendants TULARE

23   COUNTY, KINGS COUNTY, CORIZON, ORR, CFMG, FITHIAN, BOUDREAUX, ROBINSON,

24   and PEDREIRO failed to have appropriate policies, procedures, and training in place to

communicate health matters, including suicide risk, between health care, mental health care, and custody staff, and between transferring authorities, with deliberate indifference to the inmate patients' serious medical and mental-health needs.

78.     Defendants failed to provide competent medical and mental health care and treatment, were deliberately indifferent to SHAYMUS DIGIANTOMASSO'S serious medical needs and suicide risk, and failed to provide him access to any available treatment facility that would have given him the medical and psychiatric care and treatment he required.

79.     The KINGS COUNTY, CFMG, FITHIAN, and DOE Defendants failed to provide safe and adequate housing for SHAYMUS DIGIANTOMASSO, including placing him on suicide watch in a safe room or safety cell.

80.     KINGS COUNTY's, CFMG'S, and FITHIAN'S suicide prevention policies did not meet generally accepted state or national standards.  The policies even required deputies to perform a suicide watch by checking on the inmate every thirty minutes, in violation of California law and national standards.  State and generally accepted national standards require jail personnel to keep actively suicidal inmates or suicidal inmates in an isolation cell under constant observation, and to monitor potentially suicidal inmates in the general population twice every thirty minutes on an irregular schedule.  The KINGS COUNTY AND CFMG DEFENDANTS, their employees and agents, failed to put SHAYMUS DIGIANTOMASSO on suicide precautions, or under constant observation, and failed to observe him twice every thirty minutes.

81.     On or about December 6, 2013, at about 4:00 p.m., KINGS COUNTY Deputy Schaeffer handed a dinner tray to SHAYMUS DIGIANTOMASSO.  At about 4:55 p.m., KINGS COUNTY Deputy Hicks picked up the dinner trays from the inmates, including SHAYMUS DIGIANTOMASSO.

82.     Shortly thereafter, inmate Jose Ramirez went out of his cell to use the phone and saw

SHAYMUS DIGIANTOMASSO in his cell with what looked like tears on his face.  Ramirez then saw SHAYMUS walk over to the toilet and stand up on the toilet like he was reaching up and grabbing something.

83.     At about 5:55 p.m., KINGS COUNTY Deputy Moody and others found SHAYMUS DIGIANTOMASSO unresponsive in his cell.

84.     As a result of the KINGS COUNTY and CFMG Defendants,' employees', and agents' deliberate indifference to his serious medical needs, SHAYMUS DIGIANTOMASSO was left alone and without observation in his cell and had enough time to weave a rope out of torn bedding which he used to commit suicide by hanging himself.

85.     Decedent SHAYMUS DIGIANTOMASSO's death was the result of all Defendants' wrongful conduct, deliberately indifferent denial of necessary and appropriate medical and psychiatric care, failure to provide competent medical and psychiatric care and treatment, failure to communicate his suicide risk to other medical and custodial staff and between transferring facilities, failure to provide competent medical and mental health assessments, failure to transfer SHAYMUS DIGIANTOMASSO for inpatient psychiatric hospitalization, failure to maintain him on suicide watch and appropriate suicide precautions, failure to house him in a safety cell and under constant observation, and their other conduct that under these circumstances was contrary to generally accepted reasonable jail and medical procedures and standards.

86.     Alternatively or concurrently, Decedent's death was the proximate result of Defendants TULARE COUNTY, KINGS COUNTY, CORIZON, ORR, CFMG, FITHIAN, BOUDREAUX, ROBINSON, and PEDREIRO'S failure to reasonably train their custody, medical, and mental healthcare staff in the proper and reasonable care of suicidal, mentally ill, and/or emotionally disturbed inmates, failure to implement and enforce generally accepted, lawful policies and procedures at the jail, failure to institute appropriate training, policies and procedures to prevent

suicide, and their deliberate indifference to the serious medical and psychiatric needs of inmates. These substantial failures reflect Defendants TULARE COUNTY, KINGS COUNTY, CORIZON, CFMG, FITHIAN, ORR, BOUDREAUX, ROBINSON, and PEDREIRO'S policies implicitly ratifying and/or authorizing the deliberate indifference to serious medical needs by their custody, medical, and mental healthcare staff and the failure to reasonably train, instruct, monitor, supervise, investigate, and discipline custody, medical, and mental healthcare staff employed by these Defendants in the handling of suicidal, mentally ill, and/or emotionally disturbed inmates.

87.     Furthermore, Plaintiffs are informed and believe and thereon allege that Defendants TULARE COUNTY, KINGS COUNTY, CORIZON, CFMG, FITHIAN, ORR, BOUDREAUX, ROBINSON, and PEDREIRO allow un-credentialed staff, including Licensed Vocational Nurses and Marriage and Family Therapist Interns, to perform intake medical assessments, suicide risk assessments, and/or mental health assessments on patients without any appropriate clinical supervision by a Registered Nurse, physician, or otherwise properly licensed and credentialed health care provider, in violation of California law and generally accepted national standards. Plaintiffs are informed and believe and thereon allege that TULARE COUNTY, KINGS COUNTY, CORIZON, ORR, CFMG, FITHIAN, BOUDREAUX, ROBINSON, and PEDREIRO allow un-credentialed staff to perform medical, suicide-risk, and mental health assessments because it costs significantly less money than paying for properly licensed staff to do the work.

88.     Furthermore, Defendant FITHIAN prescribes medications for patients neither he nor any CFMG physician has ever seen, with deliberate indifference to inmates' serious medical needs.

89.     At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton, and/or willful, conscience shocking, reckless, malicious, deliberately indifferent to Decedent's and Plaintiffs' rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

90.     As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiffs sustained the following injuries and damages, past and future, among others:

      a.     Wrongful death of SHAYMUS DIGIANTOMASSO;

      b.     Hospital and medical expenses (Survival claims);

      c.     Coroner's fees, funeral and burial expenses (Survival claims);

      d.     Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support (wrongful death and/or loss of familial association);

      e.     Violation of constitutional rights;

      f.     Pain and suffering, including emotional distress (Based on individual § 1983 claims for loss of familial association);

      h.     SHAYMUS DIGIANTOMASSO's loss of life, pursuant to federal civil rights law (Survival claims);

      i.     SHAYMUS DIGIANTOMASSO's conscious pain and suffering, pursuant to federal civil rights law (Survival claims);

      j.     All damages, penalties, and attorneys' fees and costs recoverable under 42 USC §§ 1983, 1988, 12205, 29 U.S.C. § 794a, the ADA, the RA, California Civil Code §§ 51, 52 and 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983)**
**ALL PLAINTIFFS AGAINST DEFENDANTS BOUDREAUX, ORR, CEBALLOS, CAMBEROS, ROBINSON, PEDREIRO, HENDERSON, FITHIAN, NABORS, CEARLEY, , ECKER, WEESNER, COSTA, and DOES 1–20**

91.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

92.     DEFENDANTS, acting under the color of state law in their individual and personal capacities, deprived SHAYMUS DIGIANTOMASSO, a pretrial detainee, of the rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution by subjecting him to—or through their deliberate indifference allowing others to

subject him to—delay and denial of access to medical or mental health care for a serious but treatable medical or mental health condition, and denying him proper and necessary care for his risk of suicide.

93.     DEFENDANTS knew or must have known that SHAYMUS DIGIANTOMASSO's medical and mental health condition was serious but treatable, and they knew or must have known that he required access to and delivery of urgently needed medical and mental health care. DEFENDANTS further had a duty to provide SHAYMUS DIGIANTOMASSO with: reasonable security; a transfer for inpatient psychiatric hospitalization; housing on suicide watch; and other appropriate suicide precautions to accommodate his serious medical and mental health conditions.

94.     DEFENDANTS knew or must have known that SHAYMUS DIGIANTOMASSO required immediate intervention, hospitalization, and a higher level of care than was offered at TULARE COUNTY or KINGS COUNTY jail.  DEFENDANTS knew or must have known that SHAYMUS DIGIANTOMASSO urgently required treatment and monitoring for his serious but treatable mental health condition, and that pending such treatment he needed to be on suicide precautions at the KINGS COUNTY jail.  DEFENDANTS knew or must have known that SHAYMUS DIGIANTOMASSO could not care for himself nor advocate for his urgently needed psychiatric intervention, hospitalization, and appropriate suicide-watch protocols, and DEFENDANTS knew or must have known—but disregarded—that SHAYMUS DIGIANTOMASSO required supervision in appropriate and indicated housing, even in jail.

95.     Defendants, acting under the color of law in their individual and personal capacities, deprived SHAYMUS DIGIANTOMASSO of the rights, privileges, and immunities secured by the Fourth Amendment to be free from unreasonable seizure and the Fourteenth Amendment right to substantive due process by, through their deliberate indifference denying and refusing him necessary medical and mental health care and treatment, and/or causing others to deny and/or delay

medical and mental health care and treatment.

96.     These DEFENDANTS ignored, delayed, or denied SHAYMUS

DIGIANTOMASSO's urgently needed medical and psychiatric care and treatment.  As a result of

these Defendants' deliberate indifference and/or callous disregard for SHAYMUS

DIGIANTOMASSO's need for medical care and treatment, and their disregard and indifference to

this need, Plaintiffs and Decedent suffered damages, pain and suffering, emotional distress, anxiety,

depression, confusion, disorientation, loss of relationships, loss of life, and deprivation of

constitutional rights.

97.     By the actions and omissions described above, DEFENDANTS violated

42 U.S.C. § 1983, depriving Plaintiffs of the following clearly established and well-settled

constitutional rights protected by the First, Fourth, and Fourteenth Amendments to the United States

Constitution:

      a.    The right to be free from an unreasonable ongoing seizure of SHAYMUS
DIGIANTOMASSO as a pretrial detainee as secured by the Fourth and
Fourteenth Amendments;

      b.    The right to be free from deliberate indifference to SHAYMUS
DIGIANTOMASSO'S serious medical and mental health needs while in
custody as a pretrial detainee as secured by the Fourth and Fourteenth
Amendments;

      c.    The right to be free from wrongful governmental interference with familial
relationships, as well as the right to companionship, society, and support of
each other as secured by the First and Fourteenth Amendments.

98.     Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs

of rights described herein, knowingly, maliciously, and with conscious and reckless

disregard for whether the rights and safety of Plaintiffs (individually and on behalf of

DIGIANTOMASSO) and others would be violated by their acts and/or omissions.

99.     As a direct and proximate result of DEFENDANTS' acts and/or omissions as set

forth above, Plaintiffs sustained injuries and damages as set forth above at ¶¶ 89-90.

100.   The conduct of the individual Defendants sued in their personal capacities entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California Code of Civil Procedure §§ 377.20 et seq., and other state and federal law.  Plaintiffs do not seek punitive damages against Defendants TULARE COUNTY and KINGS COUNTY.

101.   Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and applicable state and federal codes and laws.

**SECOND CAUSE OF ACTION**
**MUNICIPAL AND SUPERVISORY LIABILITY (*Monell* - 42 U.S.C. § 1983)**
**ALL PLAINTIFFS AGAINST DEFENDANTS TULARE COUNTY, BOUDREAUX, THE**
**CORIZON DEFENDANTS, ORR, CFMG, FITHIAN, KINGS COUNTY, ROBINSON,**
**PEDREIRO, AND DOES 1-20**

102.   Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

103.   The unconstitutional actions and/or omissions of Defendants BOUDREAUX, ORR, CEBALLOS, CAMBEROS, ROBINSON, PEDREIRO, HENDERSON, FITHIAN, NABORS, ECKER, WEESNER, COSTA, CEARLEY and DOES 1–20, as well as other officers employed by or acting on behalf of the Defendants TULARE COUNTY, CORIZON, KINGS COUNTY, and/or CFMG, on information and belief were pursuant to the following customs, policies, practices, and/or procedures of Defendants TULARE COUNTY, CORIZON, KINGS COUNTY, and/or CFMG, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for TULARE COUNTY, CORIZON, KINGS COUNTY and/or CFMG:

   a.   To deny inmates access to appropriate, competent, and necessary care for serious medical and psychiatric needs;

   b.   To allow Licensed Vocational Nurses to perform intake medical and mental health assessments without clinical supervision by a Registered Nurse or physician;

c.    To allow a Marriage and Family Therapist Intern to perform an unsupervised suicide-risk assessment, and to work without direct clinical supervision;

d.    To fail to transfer suicidal patients/inmates for inpatient psychiatric hospitalization;

e.    To prescribe medication, and fail to determine what other medications or interventions may be appropriate, for a patient without the patient ever being seen by a physician or other qualified health care provider;

f.    To fail to properly classify, house and/or monitor inmates at risk of suicide or suffering from mental health disabilities, including placement on suicide watch with proper suicide precautions;

g.    To allow, encourage, and require unlicensed, inadequately trained and/or inadequately supervised staff to decide whether or not to place jail inmates on suicide precautions;

h.    To fail to institute appropriate training, policies, and procedures for the management of inmates at risk of suicide;

i.    To fail to institute appropriate training, policies, and procedures to coordinate inmate assessment, placement, suicide watch decisions, suicide precautions and care with medical and mental health services, jail physicians, jail psychiatrists and jail corrections staff, including such personnel at other jails or treatment facilities when inmates are transferred;

j.    To fail to provide medical or mental health care for inmates with serious medical and mental health needs;

k.    To fail to use appropriate and generally accepted jail procedures for handling and housing suicidal, mentally ill and/or emotionally disturbed persons, including, but not limited to, the standards of the National Commission on Correctional Health Care Standards for Health Services in Jails, and Title 15 of the California Code of Regulations;

l.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling mentally ill and/or emotionally disturbed inmates;

m.    To cover-up violations of constitutional rights by any or all of the following:

    i.    by failing to properly investigate and/or evaluate complaints or incidents related to the claimed customs, polices, practices, and procedures described above in subparagraphs (a) through (l);

    ii.    by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful activity at the TULARE

COUNTY jail and/or KINGS COUNTY jail as described above in subparagraphs (a) through (l); and

   iii. by allowing, tolerating, and/or encouraging deputies, jail personnel, medical and mental health personnel to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster Defendants' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct, by withholding and/or concealing material information;

n.   To allow, tolerate, and/or encourage a "code of silence" among employees and sheriff department personnel, whereby an employee or member of the department does not provide adverse information against a fellow employee or member of the department; and,

o.   To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of employee misconduct, including claims made under California Government Code § 910 et seq.

104.   Defendants TULARE COUNTY, CORIZON, KINGS COUNTY and CFMG—through their administrators and policy makers including BOUDREAUX, ORR, FITHIAN, ROBINSON, and PEDREIRO—failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, manage, and discipline Defendants CEBALLOS, CAMBEROS, HENDERSON, NABORS, ECKER, WEESNER, COSTA, CEARLEY, and DOES 1–20, and other TULARE COUNTY, CORIZON, KINGS COUNTY, and/or CFMG personnel, with deliberate indifference to Plaintiffs' constitutional rights, which were thereby violated as described above.

105.   The unconstitutional actions and/or omissions of Defendants CEBALLOS, CAMBEROS, NABORS, ECKER, WEESNER, COSTA, CEARLEY and DOES 1–20, and other TULARE COUNTY, CORIZON, KINGS COUNTY, and CFMG personnel DOES 1–20, as described above, were approved, tolerated and/or ratified by policy-making officers for TULARE COUNTY, CORIZON, KINGS COUNTY, and/or CFMG, including Defendants BOUDREAUX, ORR, FITHIAN, ROBINSON, and PEDREIRO.  Plaintiffs are informed and believe, and thereupon allege, the details of this incident have been revealed to the authorized policy makers within

TULARE COUNTY, CORIZON, KINGS COUNTY, and/or CFMG, including BOUDREAUX, ORR, FITHIAN, ROBINSON, and PEDREIRO, and that such policymakers have direct knowledge of the fact that SHAYMUS DIGIANTOMASSO was unlawfully denied necessary care for his serious medical needs, among other rights and accommodations.  Notwithstanding this knowledge, the authorized policy makers within TULARE COUNTY, CORIZON, KINGS COUNTY, and/or CFMG have approved of the conduct and decisions of CEBALLOS, CAMBEROS, HENDERSON, NABORS, ECKER, WEESNER, COSTA, CEARLEY and DOES 1–20 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of SHAYMUS DIGIANTOMASSO.  By so doing, the authorized policy makers within TULARE COUNTY, CORIZON, KINGS COUNTY and/or CFMG have shown affirmative agreement with each individual defendant's actions, and have ratified the unconstitutional acts of the individual defendants.

106.    The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct of Defendants TULARE COUNTY, CORIZON, KINGS COUNTY, CFMG and DOES 1– 20, were a moving force and/or a proximate cause of the deprivations of Plaintiffs' clearly established and well-settled constitutional rights in violation of 42 USC §1983, as more fully set forth in ¶ 97, above.

107.    Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

108.    As a direct and proximate result of the unconstitutional actions, omissions, customs,

policies, practices, and procedures of Defendants TULARE COUNTY, CORIZON, KINGS

COUNTY, and CFMG, including BOUDREAUX, ORR, FITHIAN, ROBINSON, and PEDREIRO,

as described above, Plaintiffs sustained serious and permanent injuries and are entitled to damages,

penalties, costs, and attorneys' fees as set forth above in ¶¶ 89-90 and 100-101, above, and punitive

damages against CORIZON, CFMG, and Defendants BOUDREAUX, ORR, FITHIAN,

ROBINSON, and PEDREIRO, in their individual capacities.

**THIRD CAUSE OF ACTION**
**(Violation of Civil Code § 52.1)**
**<u>ALL PLAINTIFFS AGAINST ALL DEFENDANTS</u>**

109.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth

here.

110.    By their acts, omissions, customs, and policies, each Defendant acting in

concert/conspiracy, as described above, and with threats, intimidation, and/or coercion, violated

Plaintiffs' rights under California Civil Code § 52.1 and the following clearly established rights

under the United States Constitution and California Constitution:

a.    The right to be free from deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and Fourteenth Amendments to the U.S. Constitution and by California Constitution, Article 1, Sections 7 and 13;

b.    The right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support of each other, as secured by the First, and Fourteenth Amendments, and as secured by California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq.

c.    The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1;

d.    The right to be free from bodily restraint, harm or personal insult as secured by California Civil Code § 43;

e.   The right to medical care as required by California Government Code § 845.6.

111.   As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiffs' rights under the United States and California Constitutions and laws, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above at ¶¶ 89-90, 100, and ¶ 97, -- and punitive damages against CORIZON, CFMG, and all individual Defendants -- including but not limited to all damages allowed by California Civil Code §§ 52 and 52.1 and California law, costs, attorneys' fees, and civil penalties.

## FOURTH CAUSE OF ACTION
(Negligence)
**ALL PLAINTIFFS AGAINST DEFENDANTS TULARE COUNTY, BOUDREAUX, KINGS COUNTY, ROBINSON, PEDREIRO, HENDERSON, and DOES 1–20**

112.   Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

113.   At all material times, each Defendant owed Plaintiffs the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

114.   At all material times, each Defendant owed Plaintiffs the duty to act with reasonable care.

115.   These general duties of reasonable care and due care owed to Plaintiffs by Defendants include but are not limited to the following specific obligations:

a.   To provide, or cause to be provided, prompt and appropriate medical and mental health care for Decedent;

b.   To summon necessary and appropriate medical care for Decedent;

c.   To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

d.   To transfer Decedent to an inpatient psychiatric facility;

e.   To provide safe and appropriate jail custody for Decedent, including

1     reasonable classification, monitoring and housing, and placing him on suicide
2     watch with proper suicide precautions;

3     f.    To use generally accepted law enforcement and jail policies and procedures
4     that are reasonable and appropriate for Decedent's status as a suicidal,
    mentally ill and/or emotionally disturbed person with serious medical needs;

5     g.    To refrain from abusing their authority granted them by law;

6     h.    To refrain from allowing their medical contractors to have employees work
7     beyond their scope of practice and without appropriate supervision;

8     i.    To refrain from violating Plaintiffs' rights as guaranteed by the United States
9     and California Constitutions, as set forth above, and as otherwise protected
    by law.

10

11     116.    Additionally, these general duties of reasonable care and due care owed to Plaintiffs
12 by Defendants TULARE COUNTY, BOUDREAUX, KINGS COUNTY, ROBINSON,
13 PEDREIRO, HENDERSON, and DOES 1–20 include but are not limited to the following specific
14 obligations:

15     a.    To properly and reasonably hire, supervise, train, retain, investigate, monitor,
16     evaluate, and discipline each person: (i) who was responsible for providing
    medical and mental health care for SHAYMUS DIGIANTOMASSO; (ii)
17     who was responsible for the safe and appropriate jail custody of SHAYMUS
    DIGIANTOMASSO; (iii) who was responsible for properly and reasonably
18     classifying, housing, and monitoring SHAYMUS DIGIANTOMASSO; (iv)
19     who denied SHAYMUS DIGIANTOMASSO medical attention or access to
    medical and mental health care and treatment, and/or; (v) who failed to
20     summon necessary and appropriate medical care for SHAYMUS
21     DIGIANTOMASSO;

22     b.    To properly and reasonably hire, investigate, train, retrain, supervise,
    monitor, evaluate, and discipline their employees, agents, and/or law
23     enforcement officers to ensure that those employees/agents/officers act at all
    times in the public interest and in conformance with the law;
24

25     c.    To institute and enforce proper policies, procedures and training for suicide
    prevention, to coordinate inmate assessment, placement, decisions, and care
26     with the jail physicians and nursing staff, jail mental health staff, jail
    corrections staff, and between transferring facilities;
27

28     d.    To make, enforce, and at all times act in conformance with policies and
    customs that are lawful and protective of individual rights, including

Plaintiffs';

e.  To require medical providers to have properly licensed and credentialed staff, including Registered Nurses, perform intake medical assessments on inmates/patients;

f.  To require medical providers to provide proper clinical supervision to all staff, including marriage and family therapist interns and licensed vocational nurses;

g.  To require medical providers to refrain from prescribing medications to patients at risk of suicide while never having even seen the patient;

h.  To transfer acutely suicidal inmates/patients to an inpatient psychiatric facility;

i.  To refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth above at ¶ 103.

117.  Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs.

118.  As a direct and proximate result of Defendants' negligence, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above at ¶¶ 89-90, 100, and ¶ 97, and punitive damages against all individual Defendants.

### FIFTH CAUSE OF ACTION
### (Violation of California Government Code § 845.6)
### ALL PLAINTIFFS AGAINST DEFENDANTS TULARE COUNTY, CEBALLOS, KINGS COUNTY, PEDREIRO, HENDERSON, and DOES 1-20

119.  Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

120.  Defendants TULARE COUNTY, CEBALLOS, KINGS COUNTY, PEDREIRO, HENDERSON, and DOES 1–20 knew or had reason to know that SHAYMUS DIGIANTOMASSO was in need of: immediate, emergency, and higher-level medical care  and psychiatric care, treatment, observation and monitoring, including being transferred for inpatient psychiatric hospitalization; receiving psychiatric care; and being placed on suicide watch while awaiting

emergency care; and each failed to take reasonable action to summon and/or to provide him access to such medical care and treatment.  Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendant TULARE COUNTY or KINGS COUNTY, knowing and/or having reason to know this, failed to take reasonable action to summon and/or provide SHAYMUS DIGIANTOMASSO access to such care and treatment in violation of California Government Code § 845.6.

121.    As legal cause of the aforementioned acts of these DEFENDANTS, Plaintiffs were injured as set forth above, and their losses entitle them to all damages allowable under California law.  Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorney fees under California law as set forth in ¶¶ 89-90, 100, and ¶ 97, above.

**SIXTH CAUSE OF ACTION**
**(Violations of Title II of the ADA, the Rehabilitation Act, and Title III of the ADA)**
**ALL PLAINTIFFS AGAINST DEFENDANTS TULARE COUNTY, CORIZON, KINGS COUNTY and CFMG**

122.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

123.    Congress enacted the Americans with Disabilities Act ("ADA") upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem."  42 U.S.C. § 12101(a)(2).

124.    DIGIANTOMASSO was a "qualified individual" with a mental illness, disability and medical impairments that limited and/or substantially limited his ability to care for himself and control his mental or physical health condition as defined under the ADA, 42 U.S.C. § 12131(2), and Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794; 28 C.F.R. 42.540(k).

125.    Defendants TULARE COUNTY and KINGS COUNTY are public entities under Title II of the ADA.  42 U.S.C. § 12131(1)(A).  Title II of the ADA applies generally to jail

"services, programs, or activities." 42 U.S.C. § 12132. Defendants TULARE COUNTY's and KINGS COUNTY's jails and mental-health services therefore are covered under Title II of the ADA. Furthermore, respondeat superior liability applies to Title II claims. Defendant TULARE COUNTY is therefore liable under Title II of the ADA for the unlawful acts of its private-entity agent CORIZON. Defendant KINGS COUNTY is also liable under Title II of the ADA for the unlawful acts of its private-entity agent CFMG. are subject to Title II of the ADA, 42 U.S.C. § 12312 et seq.

126.     Plaintiffs are informed, and believe, and thereon allege, that Defendants TULARE COUNTY and KINGS COUNTY receive federal assistance and funds, and are therefore subject to the Rehabilitation Act, 29 U.S.C. § 794. Defendants TULARE COUNTY and KINGS COUNTY are within the mandate of the RA that no person with a disability may be "excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. § 794.

127.     Under the ADA, TULARE COUNTY and KINGS COUNTY are mandated to develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities, and to ensure that the personal and civil rights of persons who are receiving services under their aegis are protected.

128.     Title III of the ADA, 42 U.S.C. §§ 12181–89, applies to private entities. 42 U.S.C. § 12181(6). CORIZON and CFMG, both corporations engaged in interstate commerce, operate for-profit business establishments providing health care, 42 U.S.C. § 12181(7)(F), within the Tulare County jail (CORIZON) and Kings County jail (CFMG). CORIZON and CFMG therefore operate places of public accommodation, and CORIZON and CFMG are subject to Title III of the ADA.

129.     Title III of the ADA provides in pertinent part that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such

individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals."  42 U.S.C. § 12182(b)(1)(A)(iii) (emphasis added).  Under Title III of the ADA, CORIZON and CFMG are mandated not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation."  42 U.S.C. § 12182(a).

130.    At all material times and as described herein, SHAYMUS DIGIANTOMASSO (1) was an individual with a disability; (2) was otherwise qualified to participate in or receive the benefit of Defendants' services, programs, or activities, including TULARE COUNTY's, CORIZON's, KINGS COUNTY's and CFMG's jail services, programs, or activities; (3) was either excluded from participation in or denied the benefits of the TULARE COUNTY, CORIZON, KINGS COUNTY, or CFMG services, programs or activities or was otherwise discriminated against by TULARE COUNTY, CORIZON, KINGS COUNTY, and CFMG; and (4) such exclusion, denial of benefits or discrimination was by reason of his disability.

131.    As described herein, TULARE COUNTY, CORIZON, KINGS COUNTY, and CFMG failed to reasonably accommodate SHAYMUS DIGIANTOMASSO's disability in the course of jailing him and denying him medical care, causing him to suffer greater injury in the process than other detainees or arrestees, including death.  TULARE COUNTY's, CORIZON's, KINGS COUNTY's and CFMG's failures to accommodate SHAYMUS DIGIANTOMASSO's disability include but are not limited to:

    a.   causing the violation of SHAYMUS DIGIANTOMASSO's rights through all customs, policies, and practices identified at ¶ 103, above;

    b.   failing to use lawful and appropriate policies, practices, and procedures for a mentally ill and/or emotionally disturbed person under the circumstances;

c.   failing to transfer SHAYMUS DIGIANTOMASSO to an inpatient psychiatric facility;

d.   failing to provide SHAYMUS DIGIANTOMASSO with competent and appropriate medical, mental health, and psychiatric care;

e.   failing to institute suicide precautions for SHAYMUS DIGIANTOMASSO;

f.   placing SHAYMUS DIGIANTOMASSO in isolated, segregated housing with no observation or mental health followup;

g.   failing to develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities, and to ensure that the personal and civil rights of persons who are receiving services under its aegis are protected;

h.   failing to communicate SHAYMUS DIGIANTOMASSO'S condition and suicide risk between transferring facilities;

i.   other failures to provide accommodations as the evidence in this case may show.

132.   As a direct and proximate result of TULARE COUNTY's, CORIZON's, KINGS COUNTY's, and CFMG's violations of the ADA and RA, Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs and attorneys' fees as set forth in ¶¶ 89-90, 100-101, and ¶ 97, above.

**SEVENTH CAUSE OF ACTION**
**(Violation of California Civil Code § 51 (Unruh Civil Rights Act))**
**ALL PLAINTIFFS AGAINST DEFENDANTS CORIZON AND CFMG**

133.   Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

134.   By their acts, omissions, customs, and policies, Defendants CORIZON and CFMG, entities covered by Cal. Civ. Code §§ 51 and 52, and their employees and agents, denied SHAYMUS DIGIANTOMASSO full and equal accommodations, advantages, facilities, privileges, and/or services because of his disability and/or medical condition.

135. A substantial motivating reason for CORIZON's and CFMG's conduct was SHAYMUS DIGIANTOMASSO's disability and/or medical condition.

136. Defendants CORIZON's and CFMG's conduct was a substantial factor in causing Plaintiffs' harm. As a direct and proximate result of CORIZON's and CFMG's conduct, Plaintiffs sustained injuries and damages, and are entitled to relief as set forth above at ¶¶ 89-90, 100, and ¶ 97, including but not limited to all damages allowed by California Civil Code §§ 51 and 52 and California law, and also including, but not limited to, treble damages and attorneys' fees.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

a. Compensatory and exemplary damages in an amount according to proof and which is fair, just, and reasonable;

b. Punitive damages under 42 U.S.C. § 1983 and California law in an amount according to proof and which is fair, just, and reasonable (punitive damages are not sought against Tulare County or Kings County);

c. All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983, 1988, and 12205 and Title II and Title III of the ADA, 29 U.S.C. §§ 794 and 794a,; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 51, 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law;

d. Declaratory and injunctive relief, including but not limited to, the following:

    i. An order requiring TULARE COUNTY, CORIZON, KINGS COUNTY, and CFMG to institute and enforce appropriate and lawful policies and procedures for handling suicidal, mentally ill and/or emotionally disturbed persons, and/or persons with serious medical needs, both in and out of jail;

    ii. An order requiring TULARE COUNTY, CORIZON, KINGS COUNTY, and CFMG to have Registered Nurses or physicians perform intake medical assessments, or provide direct clinical supervision (by and RN or physician) of any Licensed Vocational Nurses performing intake medical assessments;

iii.   An order requiring TULARE COUNTY, CORIZON, KINGS COUNTY, and CFMG to provide appropriate clinical supervision to all marriage and family therapist interns;

iv.   An order prohibiting TULARE COUNTY, CORIZON, KINGS COUNTY, and CFMG from placing nonthreatening, nonviolent suicidal inmates into segregated, isolated cells;

v.   An order requiring TULARE COUNTY, CORIZON, KINGS COUNTY, and CFMG to keep all inmates at risk of suicide who are in a segregated, isolated cell under constant observation;

vi.   An order prohibiting TULARE COUNTY, CORIZON, KINGS COUNTY, and CFMG from engaging in unconstitutional customs, policies, and practices as proven in this case;

vii.   An order prohibiting TULARE COUNTY, CORIZON, KINGS COUNTY, and CFMG and their agents and employees from engaging in the "code of silence" as may be supported by the evidence in this case;

viii.   An order requiring TULARE COUNTY, CORIZON, KINGS COUNTY and CFMG to train all sheriff's deputies and medical staff concerning generally accepted and proper tactics and procedures for the handling of mentally ill and/or emotionally disturbed persons, suicidal persons, and persons with serious medical needs and this Court's order concerning the issues raised in injunctive relief requests i–vii, above.

e.   Such other and further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiffs hereby demand a jury trial in this action.

Dated:  December 3, 2014                    HADDAD & SHERWIN


                                     __/s/ Julia Sherwin_____
                                     JULIA SHERWIN
                                     Attorneys for Plaintiffs