1

2

3

4  UNITED STATES DISTRICT COURT

5  EASTERN DISTRICT OF CALIFORNIA

6

7  LAURIE SHAYMUS and RANDY          No.  1:14-cv-01633-MCE-GSA
   DIGIANTOMASSO, individually and as
8  Co-Successors in Interest of Decedent
   SHAYMUS DIGIANTOMASSO,
9                                    **MEMORANDUM AND ORDER**
                  Plaintiffs,
10
        v.
11
   TULARE COUNTY, a public entity;
12 TULARE COUNTY (ACTING)
   SHERIFF-CORONER MIKE
13 BOUDREAUX, in his individual and
   official capacity; TULARE COUNTY
14 CLINICAL SOCIAL WORKER ERNIE
   CEBALLOS; CORIZON HEALTH, INC.,
15 a Delaware corporation; CORIZON,
   INC., a Missouri corporation;
16 CORIZON, LLC, a Delaware
   corporation; VALITAS HEALTH
17 SERVICES, INC., a Delaware
   corporation; HAROLD ORR, M.D.;
18 BEATRIZ CAMBEROS, L.V.N.; KINGS
   COUNTY, a public entity; KINGS
19 COUNTY SHERIFF-CORONER
   DAVID ROBINSON, in his individual
20 and official capacity; KINGS COUNTY
   SHERIFF'S COMMANDER KIM
21 PEDREIRO, in her individual and
   official capacity; KINGS COUNTY
22 SHERIFF'S SERGEANT SHERRI
   HENDERSON; CALIFORNIA
23 FORENSIC MEDICAL GROUP, INC., a
   California corporation; TAYLOR
24 FITHIAN, M.D.; MEGAN NABORS,
   L.V.N.; DANIELLE ECKER; LINDA
25 WEESNER, R.N.; MINNETTA COSTA,
   R.N.; JANA CEARLEY, L.P.T., and
26 DOES 1-20, individually, jointly, and
   severally,
27
                  Defendants.
28

                                    1

1    Plaintiffs Laurie and Randy DiGiantomasso ("Plaintiffs") filed this civil rights,

2  wrongful death, and survival action on behalf of themselves and as co-successors in

3  interest of their son, Shaymus DiGiantomasso ("Shaymus"), who committed suicide

4  while a pre-trial detainee in Kings County Jail.  Prior to his detention in Kings County jail,

5  Shaymus was seen by a Tulare County social worker and was briefly detained in Tulare

6  County jail.  Corizon Health, Inc. ("Corizon") provides the medical services at Tulare

7  County jail.

8    The First Amended Complaint ("FAC") includes claims under 42 U.S.C. § 1983,

9  the First, Fourth, and Fourteenth Amendments, Monell v. New York City Department of

10  Social Services, 436 U.S. 658 (1978) ("Monell"), the Americans with Disabilities Act

11  ("ADA") Title II (42 U.S.C. §§ 12131-12165) and Title III (42 U.S.C. §§ 12181-12189), the

12  Rehabilitation Act ("RA") (29 U.S.C. § 794), the Bane Act (Cal. Civ. Code § 52.1),

13  California Government Code section 845.6, the Unruh Act (Cal. Civ. Code § 51), and

14  common law negligence.

15    Currently before the Court are five Motions to Dismiss brought by the following:

16  (1) Harrold Orr, M.D., Corizon, and Beatriz Camberos, L.V.N. (ECF No. 27); (2) Corizon,

17  LLC and Valitas Health Services, Inc. (ECF No. 30); (3) Tulare County and the Tulare

18  County Sheriff-Coroner Mike Boudreaux (ECF No. 42); (4) Tulare County Clinical Social

19  Worker Ernie Ceballos (ECF No. 43); and (5) Kings County, Sherriff-Coroner David

20  Robinson, Commander Kim Pedreiro, and Sergeant Sherri Henderson (ECF No. 37).

21  The remaining Defendants, the medical providers at Kings County jail, have filed an

22  answer (ECF No. 38).[1]

23    For the following reasons, ECF Nos. 27, 30, 42, and 43 are GRANTED and ECF

24  No. 37 is GRANTED in part and DENIED in part.[2]

25    _____

       [1] The status of one defendant, "Corizon, Inc.," is unclear.  The recently filed joint status report

26  claims Corizon, Inc. is "non-existent" (ECF No. 48 at 4:23), but the company was served and is
represented by counsel.  The company has not filed an answer or a motion to dismiss.

27           [2] Because oral argument would not have been of material assistance, the Court ordered all of

28  these matters submitted on the briefs.  E.D. Cal. L. R. 230(g); ECF No. 60.

1

2

### BACKGROUND[3]

3   Shaymus was twenty-one years old and worked as an unsworn detention officer

4   at the Tulare County Jail.  He had a history of mental illness, including major depression

5   and panic disorder.  On or about November 23, 2013, Shaymus took 100 Klonopin pills

6   (medication used to treat panic disorders) and drank alcohol in a suicide attempt.  He

7   was transported to Kaweah Delta Medical Center, where he received treatment from

8   Ernie Ceballos ("Ceballos"), a Tulare County clinical social worker.  Ceballos performed

9   a mental health crisis intervention and evaluation on Shaymus.  Ceballos then decided

10  to release Shaymus to his roommate.

11  On December 1, 2013, at 11:00 pm, Shaymus again attempted suicide by

12  overdosing on pills.  In response, Tulare County Sherriff's Office deputies went to his

13  home and asked to see the pills he used in the attempt.  Shaymus led police to his safe,

14  where he kept his medication.  Inside the safe was a piece of highly explosive detonation

15  cord.

16  Early in the morning of December 2, 2013, the deputies transferred Shaymus to

17  Kaweah Delta Medical Center, where he was again treated by Ceballos.  Even though

18  this was Shaymus's second suicide attempt in eight days, Ceballos determined that

19  Shaymus's suicide risk was low and released Shaymus with a voluntary request to go to

20  the Veteran's Administration Hospital in nearby Fresno.

21  Later that afternoon, when it was discovered that Shaymus was not going to go to

22  the hospital voluntarily, Ceballos conducted an evaluation of Shaymus in a grocery store

23  parking lot.

24  ///

25  ///

26

27

28

---

[3] Unless otherwise noted, the following recitation of facts is taken, sometimes verbatim, from Plaintiffs' FAC, ECF No. 12.  This summary includes only the facts pertinent to the pending Motions to Dismiss; facts pertaining to the medical care DiGiantomasso received at the Kings County jail are not included here, as those defendants are not seeking dismissal.

1    He then decided to place Shaymus on a 72-hour 5150 hold.[4]   This was the last

2   encounter Ceballos had with Shaymus; Shaymus's treatment during the 5150 hold was

3   provided by Dr. Aking.[5]

4    On December 5, 2013, after Shaymus was released from his 5150 hold, he was

5   arrested for possessing the detonation cord and taken to Tulare County jail.  However,

6   given Shaymus's employment at the Tulare County jail, it was determined that he should

7   be transferred to Kings County jail.  Prior to his transfer, an intake form was completed

8   by Beatriz Camberos ("Camberos"), an employee of Corizon and a Licensed Vocational

9   Nurse ("L.V.N.").   The intake process revealed Shaymus's recent suicide attempts and

10   5150 hold, his history of depression and panic disorder, and his current feelings of

11   hopelessness and helplessness.  The information on the intake form was not relayed to

12   Kings County staff.

13    Shaymus arrived at Kings County jail an hour after the Tulare County intake form

14   was completed.  Shortly thereafter, an employee of Kings County's medical provider

15   completed a new intake form, which revealed the same information as the Tulare County

16   intake.  A psychiatric technician then met with Shaymus, noted the same potential risk

17   factors for suicide, and conveyed that information to Commander Kim Pedreiro.

18   Commander Pedreiro decided to house Shaymus in the booking area away from the

19   inmates, but Shaymus was not officially placed on suicide watch.

20    The following day, Shaymus expressed that he was having trouble viewing

21   _____

22    [4] Section 5150 of the Welfare and Institutions Code states in pertinent part:

23    When any person, as a result of mental disorder, is a danger to others, or
      to himself or herself, or gravely disabled, a peace officer, member of the
24    attending staff, as defined by regulation, of an evaluation facility
      designated by the county, designated members of a mobile crisis team
25    provided by Section 5651.7, or other professional person designated by
      the county may, upon probable cause, take, or cause to be taken, the
26    person into custody and place him or her in a facility designated by the
      county and approved by the State Department of Mental Health as a
27    facility for 72-hour treatment and evaluation.

28    [5] Dr. Aking is not currently a defendant to this case.

4

1    himself as an inmate rather than a detention officer.  He also stated that he did not want

2    to move to general population area with the other inmates and claimed he would hurt

3    himself if he was not given a private cell.  After speaking with Sergeant Sherri

4    Henderson, Shaymus agreed to try an isolation cell.   Shaymus then went to court,

5    where he was denied release on his own recognizance.  When he returned, Sergeant

6    Henderson placed Shaymus in an isolation cell in the Secured Housing Unit.  During his

7    time in the isolation cell, Shaymus was monitored once an hour.  Shaymus was not

8    provided a safety smock (a stiff garment that cannot be fashioned into a noose), and he

9    had access to bedding and clothing.  In between two guard checks at 4:55 pm and

10   5:55 pm, Shaymus braided a bedsheet into a rope and hung himself.  Plaintiffs

11   subsequently filed this action seeking compensatory and punitive damages, along with

12   declaratory and injunctive relief.

13

14                                                  **STANDARD**

15

16          On a motion to dismiss for failure to state a claim under Federal Rule of Civil

17   Procedure 12(b)(6),[6] all allegations of material fact must be accepted as true and

18   construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

19   Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain

20   statement of the claim showing that the pleader is entitled to relief' in order to 'give the

21   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell

22   Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

23   47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

24   detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

25   his entitlement to relief requires more than labels and conclusions, and a formulaic

26   recitation of the elements of a cause of action will not do."  Id. (internal citations and

27   _____

28          [6] Unless otherwise stated, all further references to "Rule" or "Rules" are to the Federal Rules of
     Civil Procedure.

1  quotations omitted).  A court is not required to accept as true a "legal conclusion

2  couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

3  Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief

4  above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright &

5  Arthur R. Miller, Federal Practice and Procedure, § 1216 (3d ed. 2004) (stating that the

6  pleading must contain something more than "a statement of facts that merely creates a

7  suspicion [of] a legally cognizable right of action")).

8         Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

9  assertion, of entitlement to relief."  Twombly, 550 U.S. at 555 n.3 (internal citations and

10  quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

11  to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

12  the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing Wright &

13  Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to

14  relief that is plausible on its face."  Id. at 570.  If the plaintiffs "have not nudged their

15  claims across the line from conceivable to plausible, their complaint must be dismissed."

16  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge

17  that actual proof of those facts is improbable, and 'that a recovery is very remote and

18  unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

19         A court granting a motion to dismiss a complaint must then decide whether to

20  grant leave to amend.  Leave to amend should be "freely given" where there is no

21  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

22  to the opposing party by virtue of allowance of the amendment, [or] futility of the

23  amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); see Eminence Capital,

24  LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as

25  those to be considered when deciding whether to grant leave to amend).  Not all of these

26  factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party

27  . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d

28  183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear

1  that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest

2  Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d

3  1006, 1013 (9th Cir. 2005)); "Leave need not be granted where the amendment of the

4  complaint . . . constitutes an exercise in futility."  Ascon Props., Inc. v. Mobil Oil Co.,

5  866 F.2d 1149, 1160 (9th Cir. 1989).

6         Three of the pending Motions in this case were brought as "Motion[s] to Dismiss

7  or, Alternatively, to Strike" the FAC.  See ECF Nos. 27, 30, 42.  Rule 12(f) permits the

8  Court to "strike from a pleading an insufficient defense or any redundant, immaterial,

9  impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The function of a Rule 12(f)

10 motion is "to avoid the expenditure of time and money that must arise from litigating

11 spurious issues by dispensing with those issues prior to trial."  Whittlestone, Inc. v.

12 Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010).

13

14                                          **ANALYSIS**

15

16     **A. Dr. Orr, Corizon and Camberos**

17         Corizon coordinates healthcare for Tulare County jail inmates.  Camberos, a

18 Corizon employee, conducted Shaymus's intake screening.   Harold Orr, M.D. ("Dr. Orr")

19 did not have any direct contact with Shaymus but was Corizon's regional medical

20 director overseeing Tulare County.  These Defendants argue that Plaintiffs' five claims

21 against them for deliberate indifference under § 1983, Monell, Bane Act, ADA/RA, and

22 Unruh Act violations fail to include factual allegations plausibly showing the requisite

23 elements.  The Court agrees.

24          **1.  § 1983 "Deliberate Indifference" Claim against Camberos and
              Dr. Orr**

25

26         Under the Fourteenth Amendment, pretrial detainees like Shaymus have "the

27 established right to not have officials remain deliberately indifferent to their serious

28 medical needs."  Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002).  The

1 standard is the same as the Eighth Amendment's protection against cruel and unusual

2 punishment for inmates.  Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1242-43

3 (9th Cir. 2010).

4     A plaintiff can sue the state under 42 U.S.C. § 1983[7] if they show that the state, or

5 an independent contractor hired to perform state functions, was deliberately indifferent to

6 a pretrial detainees' serious medical needs.  West v. Atkins, 487 U.S. 42, 54-56 (1988).

7 To state a deliberate indifference claim, Plaintiffs must show a "serious medical need"

8 such that "failure to treat a prisoner's condition could result in further significant injury or

9 the unnecessary or wanton infliction of pain."  Estelle v. Gamble, 429 U.S. 97, 101

10 (1976).  A "heightened" risk of suicide is considered a serious medical need.  Simmons

11 v. Navajo Cnty., 609 F.3d 1011, 1018 (9th Cir. 2010).  Plaintiffs must show that

12 Defendants were "(a) subjectively aware of the serious medical need and (b) failed to

13 adequately respond."  Id. (emphasis original).  Plaintiffs must also show that each

14 individual Defendant proximately caused the deprivation of a federal protected right.

15 Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988).   "The requisite causal connection

16 can be established . . . by setting in motion a series of acts by others which the actor

17 knows or reasonably should know would cause others to inflict the constitutional injury."

18 Redman v. Cnty. of San Diego, 942 F.2d 1435, 1447 (9th Cir. 1991) abrogated on other

19 grounds by Farmer v. Brennan, 511 U.S. 825 (1994) (quoting Johnson v. Duffy, 588 F.2d

20 740, 743-44 (9th Cir. 1978).

21 ///

22 ///

23

24     [7] Title 42 U.S.C. § 1983 states in relevant part:

25     Every person who, under color of any statute, ordinance, regulation,
       custom, or usage, of any State . . . subjects, or causes to be subjected,
26     any citizen of the United States or other person within the jurisdiction
       thereof to the deprivation of any rights, privileges, or immunities secured
27     by the Constitution and laws, shall be liable to the party injured in an
       action at law, suit in equity, or other proper proceeding for redress . . . .

28

8

1    Camberos argues that she was not subjectively aware of Shaymus's heightened

2    risk of suicide, as Shaymus twice denied experiencing current suicidal ideation during

3    her intake evaluation.[8]   Defs.' Mot. to Dismiss, Exh. 1, ECF No. 27-1, at 3, § 2.   Despite

4    those denials, Plaintiffs have pled sufficient facts to plausibly argue that Camberos was

5    aware that Shaymus posed a heightened suicide risk.   Shaymus reported to Camberos

6    that he had tried to commit suicide twice in an eight-day period, felt helpless and

7    hopeless, had a history of major depression and a panic disorder, and a personal and

8    family history of suicide.

9    However, Plaintiffs have not pled sufficient facts to show that Camberos did not

10   adequately respond to Shaymus's serious medical needs or that she proximately caused

11   his suicide.   Plaintiffs argue that Camberos could have communicated his suicide risk to

12   Kings County jail, obtained a mental health evaluation of Shaymus, or requested that

13   Shaymus be transferred to an inpatient mental health facility.   While transmitting the

14   information along with Shaymus to Kings County jail or obtaining a mental health

15   evaluation is plausibly pled as an adequate response to the heightened suicide risk,

16   Plaintiffs cannot show that Camberos' failure to do so proximately caused Shaymus's

17   suicide because Kings County received the same information in its intake process and

18   conducted its own mental health evaluation.

19   Further, while transferring Shaymus to an inpatient mental health facility may

20   have prevented the suicide, Plaintiffs have not pled sufficient facts to show that this

21   action would have been a reasonable response by Camberos.   All that the Constitution

22   required of Camberos was that she take "reasonable measures" to abate harm.   Farmer,

23   511 U.S. at 847.   By the time Camberos conducted the intake screening, Tulare County

24   had already determined that Shaymus was going to be quickly transferred to another

25   ───────────

26   [8] These sections of the intake form were not mentioned in the Complaint.   However, contrary to
     Plaintiffs' arguments, the Court can consider the intake form in its entirety because it was referenced in the
     Complaint and the Complaint necessarily relies on the information contained in the intake form.   See
27   Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994) ("A court may consider evidence on which the
     complaint 'necessarily relies' if:  (1) the complaint refers to the document; (2) the document is central to
     the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6)
28   motion.")  Plaintiffs have not questioned the authenticity of the full intake form filed by Defendants.

1    facility; Camberos had no reason to suspect that appropriate suicide precautions would

2    not be taken at Kings County jail.  She also knew that while he posed a heightened risk

3    of suicide due to his recent attempts, he stated that he was not currently suicidal and

4    had just been released from a 5150 hold by mental health professionals.  Thus, there

5    was not an "urgent health problems requiring hospitalization."  Gibson, 290 F.3d at 1190.

6    Plaintiffs have not pled sufficient facts to show that failing to recommend that Shaymus

7    be transferred to an inpatient mental health facility under these circumstances rises to

8    the level of deliberate indifference.  Thus, the § 1983 claim against Camberos is

9    DISMISSED.

10    In order to have a valid supervisory liability claim against Dr. Orr in his individual

11    capacity, Plaintiffs must plead sufficient facts to show that his training, supervision, or

12    control of his subordinates led to the constitutional deprivation.  See Larez v. City of L.A.,

13    946 F.2d 630, 646 (9th Cir. 1991).[9]  Plaintiffs argue that Dr. Orr failed to train staff on the

14    proper care of suicidal or mentally ill inmates.  Under this failure-to-train theory, Plaintiffs

15    must prove both (1) that Dr. Orr, as the policymaker for Corizon, was deliberately

16    indifferent to the need to train the medical staff about proper care of suicidal or mentally

17    ill inmates and (2) that the lack of training actually caused the harm.  Connick v.

18    Thompson, 131 S. Ct. 1350, 1358 (2011).  As discussed above, Plaintiffs have not

19    shown that Shaymus's suicide was caused by the actions of the Corizon employee,

20    Camberos, and thus no further training of Camberos could have prevented this harm.

21    Therefore, the § 1983 claim against Dr. Orr is DISMISSED as well.

### 2.  Monell Claim against Corizon and Dr. Orr

23    Plaintiffs also asserted a § 1983 claim against Corizon and Dr. Orr in his official

24    capacity under the theory of municipal liability established by the Supreme Court in

25    Monell.  Corizon and Dr. Orr, as private entities acting under the color of law, are subject

26

27    [9] Additionally, supervisory liability can be found for the defendant's "acquiescence in the constitutional deprivations of which the complaint is made" or "for conduct that showed a reckless or callous indifference to the rights of others."  Id. (internal citations and quotation marks omitted).  However, Plaintiffs do not argue that Dr. Orr is liable for either of these reasons.

28

1  to Monell liability if Plaintiffs can show that there was a constitutional violation "caused by

2  an official policy or custom" of Corizon.  See Tsao v. Desert Place, Inc., 698 F.3d 1128,

3  1138-39 (9th Cir. 2012).  Plaintiffs argue that Corizon and Dr. Orr's failure to implement

4  and enforce generally accepted policies led to Shaymus's death.

5       Specifically, in regard to Corizon Plaintiffs argue that Corizon:  (1) allowed L.V.N.s

6  to perform intake assessments; (2) failed to have appropriate polices in place to

7  communicate health matters between health care, mental health care, and custody staff,

8  and between transferring authorities; (3) failed to institute appropriate policies and

9  procedures to coordinate inmate assessment, placement, suicide watch decisions,

10  suicide preventions, and care with medical and mental health services at the jail and

11  when inmates are transferred; and (4) failed to transfer suicidal inmates for inpatient

12  psychiatric hospitalization.

13       There is no reference to an actual policy of Corizon at Tulare County jail, only to a

14  lack of policies.  While omissions by policymakers can lead to liability under Monell,

15  Plaintiffs must still show that the omission caused an employee to commit a

16  constitutional violation.  Gibson, 290 F.3d at 1186.  As already discussed, Plaintiffs are

17  unable to show that the lack of communication between Tulare County jail and Kings

18  County jail proximately caused the constitutional harm.  Nor can Plaintiffs show that

19  having the intake form at Tulare County jail completed by a registered nurse, rather than

20  an L.V.N., would have prevented the harm.  Since Plaintiffs were unable to show the

21  constitutional violation was caused by Corizon staff acting under a Corizon policy (or lack

22  thereof), the Monell claim is DISMISSED.

23       **3.  Bane Act Claim against Corizon, Dr. Orr and Camberos**

24       Defendants contend that Plaintiff's claim under the Bane Act fails substantively

25  because Plaintiff has not pled that any of the Defendants, by threat, intimidation, or

26  coercion, prevented Shaymus from doing something he was lawfully permitted to do or

27  forced him from doing something he was not required to do.  The relevant portion of the

28  Bane Act authorizes a claim for relief "against anyone who interferes, or tries to do so, by

11

1   threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights

2   secured by federal or state law." Jones v. Kmart Corp., 17 Cal. 4th 329, 331 (1998).  To

3   prove a Bane Act violation, a plaintiff must show that a defendant attempted to, or did,

4   "prevent the plaintiff from doing something that he had the right to do under the law, or to

5   force plaintiff to do something that he was not required to do under the law." Austin B. v.

6   Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 883 (2007).  "Speech alone is not

7   sufficient to support a [Bane Act claim] except upon a showing that the speech itself

8   threatens violence . . . and the person . . . against whom the threat is directed

9   reasonably fears that, because of the speech, violence will be committed against them

10   or their property and that the person threatening violence has the apparent ability to

11   carry out the threat."  Cal. Civ. Code § 52.1(j).

12       Plaintiffs argue that it is sufficient to simply state that that Defendants were

13   deliberately indifferent.  However, Plaintiffs are required to show threats, intimidation, or

14   coercion that is separate to the constitutional violation.  See Lopez v. Cnty. of Tulare,

15   No. 1:11-cv-1547-LJO-BAM, 2012 WL 33244, *11 (E.D. Cal. Jan. 6, 2012)

16   ("Incarceration coupled with deliberate indifference to medical and psychiatric needs

17   does not constitute 'threats, intimidation, or coercion' for purposes of [the Bane Act].");

18   Sanchez v. City of Fresno, 914 F. Supp. 2d 1079, 1118 (E.D. Cal. 2012) ("Whether there

19   was a violation of a right and whether that violation was accompanied by threat,

20   intimidation, or coercion are separate analytic inquiries.").

21       Plaintiffs have not pled facts showing any threat, intimidation, or coercion on the

22   part of Corizon's staff that prevented Shaymus from doing something he had a right to

23   do or forced him to do something he was legally not required to do.  Thus, the Bane Act

24   claim against the Corizon, Dr. Orr and Camberos is DISMISSED.

25                    **4.  ADA/RA Claim against Corizon**

26       Plaintiffs have essentially conceded that they do not have a valid claim under Title

27   III of the ADA because they cannot show that Tulare County jail was a place of public

28   accommodation.  To prevail on a claim under Title III, there must be a showing of

1   (1) disability, (2) that the defendant is a private entity that owns, leases, or operates a

2   place of public accommodation, and (3) that there was a denial of public

3   accommodations by the defendant because of the plaintiff's disability.  Molski v. M.J.

4   Cable, Inc., 481 F.3d 727, 730 (9th Cir. 2007).  While it is well established that Title II of

5   the ADA applies to jails' services, programs, and activities for pretrial detainees, see

6   Pierce v. County of Orange, 526 F.3d 1190, 1214-15 (9th Cir. 2008), the same cannot

7   be said of Title III.  Title III of the ADA contains an exhaustive and exclusive list of places

8   that may be considered "public accommodation," and a jail is not among them.  See

9   42 U.S.C. § 12181(7).   Therefore, this claim must be dismissed with prejudice.

10       Plaintiffs request leave to amend the complaint to add a Title II claim.  Such

11   amendment would be futile.  "To state a claim under Title II of the ADA, the plaintiff must

12   allege:  (1) he is an individual with a disability; (2) he is otherwise qualified to participate

13   in or receive the benefit of some public entity's services, programs, or activities; (3) he

14   was either excluded from participation in or denied the benefits of the public entity's

15   services, programs, or activities, or was otherwise discriminated against by the public

16   entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his]

17   disability."  Simmons, 609 F.3d at 1021 (quoting McGary v. City of Portland, 386 F.3d

18   1259, 1265 (9th Cir. 2004)).

19       Shaymus's depression and panic disorder qualify as a disability.   However, the

20   fact that Corizon may have failed "to provide competent and appropriate mental-health

21   care" as alleged by Plaintiffs, see ECF No. 50 at 24:9-10, is insufficient to state a claim

22   under the ADA.  The ADA "prohibits discrimination because of disability, not inadequate

23   treatment for disability."  Simmons, 609 F.3d at 1022.  Therefore, amendment to add a

24   Title II claim against these Defendants would be futile and Plaintiffs' request is DENIED.

25       Because "[t]here is no significant difference in analysis of the rights and

26   obligations created by the ADA and the Rehabilitation Act," Zukle v. Regents of

27   University of California, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999), Plaintiffs' claim that

28   the Corizon defendants violated the RA is DISMISSED.

1  **5.  Unruh Act Claim against Corizon**

2  "To prevail on [a] disability discrimination claim under the Unruh Civil Rights Act,

3  [a] plaintiff must establish that (1) he was denied the full and equal accommodations,

4  advantages, facilities, privileges, or services in a business establishment; (2) his

5  disability  was a motivating factor for this denial; (3) defendants denied plaintiff the full

6  and equal accommodations, advantages, facilities, privileges, or services; and (4)

7  defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm."

8  Wilkins-Jones v. Cnty. of Alameda, 859 F. Supp. 2d 1039, 1048 (N.D. Cal. 2012)

9  (quoting Johnson v. Beahm, No. 2:11-cv-0294-MCE-JFM, 2011 WL 5508893, at *4 (E.D.

10  Cal. Nov. 8, 2011)).  This Court has explicitly joined other California District Courts in

11  holding that the Unruh Act does not apply to county jails as they are not considered

12  "business establishments."   See Estate of Bock ex rel. Bock v. Cnty. of Sutter,

13  No. 2:11-CV-00536-MCE, 2012 WL 423704, at *10 (E.D. Cal. Feb. 8, 2012); Anderson v.

14  Siskiyou County, No. C 10-01428 SBA, 2010 WL 3619821, at *5-6 (N.D. Cal. Sept. 13,

15  2010); Taormina v. Cal. Dep't of Corr., 946 F. Supp. 829, 834 (S.D. Cal. 1996).

16  Accordingly, the Unruh Act claim must be DISMISSED without leave to amend.

17  Thus, Camberos, Dr. Orr and Corizon's Motion to Dismiss is GRANTED in its

18  entirety.

19  **B.  Corizon, LLC and Valitas Health Services, Inc.**

20  Since the Court finds that Plaintiffs have failed to state a valid claim against

21  Corizon, there cannot possibly be valid claims against Corizon's alleged alter egos,

22  Corizon, LLC and Valitas Health Services, Inc.  Accordingly, Corizon, LLC and Valitas

23  Health Services, Inc. are DISMISSED and their motion is GRANTED in its entirety.

24  Additionally, on the Court's own motion, Corizon, Inc., a non-moving Defendant, is

25  DISMISSED because this is another alleged alter ego of Corizon Health, Inc.  See

26  Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may

27  properly on its own motion dismiss an action as to defendants who have not moved to

28  dismiss where such defendants are in a position similar to that of moving defendants or

14

1   where claims against such defendants are integrally related.").

2   ### C. Tulare County and Sheriff-Coroner Mike Boudreaux

3   Tulare County operates the Tulare County jail where Shaymus was briefly

4   detained. Sheriff-Coroner Mike Boudreaux ("Sheriff Boudreaux") did not have any direct

5   contact with Shaymus but was in charge of setting policy for the Tulare County jail.

6   Plaintiffs bring the same claims against these two Defendants as the Corizon

7   Defendants with the addition of a negligence claim against Tulare County and Sheriff

8   Boudreaux and a California Government Code section 845.6 claim against Tulare

9   County only.

10   ### 1. § 1983, <u>Monell</u>, Bane Act, and ADA/RA Claims

11   Plaintiffs' claims against Tulare County and Sheriff Boudreaux involve the same

12   set of facts and the same allegations as the claims against the Corizon Defendants.

13   Once again, Plaintiffs argue that Defendants failed to train their staff to properly treat

14   mentally ill and suicidal detainees, did not provide adequate treatment to Shaymus, and

15   had an unlawful policy of allowing L.V.N.s to conduct the initial intake screening. There

16   is no independent action by Tulare County or Sheriff Boudreaux that changes the

17   analysis above.

18   Because Plaintiffs failed to demonstrate a causal link between a lack of training or

19   supervision at Tulare County and the eventual alleged constitutional deprivation, the

20   § 1983 claim must be dismissed. <u>Connick</u>, 131 S. Ct. at 1358. Because Plaintiffs

21   cannot point to a policy at the Tulare County jail or an omission by Tulare County policy

22   makers that led to Shaymus's suicide, the <u>Monell</u> claims must be dismissed. <u>Gibson</u>,

23   290 F.3d at 1185-86. Because Defendants did not employ threats, intimidation, or

24   coercion against Shaymus during his custody at Tulare County jail, the Bane Act claim

25   must be dismissed. <u>Austin B.</u>, 149 Cal. App. 4th at 883. And finally, because Plaintiffs

26   cannot show that Shaymus was denied services due to his disability but rather claim that

27   he received inadequate services to treat his disability, the ADA/RA Title II claim must be

28   dismissed. <u>Simmons</u>, 609 F.3d at 1022; <u>Zukle</u>, 166 F.3d at 1045 n.11.

1

**2.  Negligence Claim against Tulare County and Sheriff Boudreaux**

2     Tulare County argues that a negligence claim against a public entity is improper

3 absent a statutory basis for liability under California Government Code section 815(a),

4 and there is no statutory basis for a government entity to be liable for negligence in its

5 hiring and supervision (the basis for Plaintiffs' claims against Tulare County).

6     In response, Plaintiffs argue that California Government Code section 815.2

7 allows for vicarious liability.  However, vicarious liability is only authorized when the

8 employee is not immune.  The case cited by Plaintiffs in support of their argument clearly

9 establishes this exception.  See Robinson v. Solano Cnty., 278 F.3d 1007, 1016 (9th Cir.

10 2002) ("California, however, has rejected the Monell rule and imposes liability on

11 counties under the doctrine of respondeat superior for acts of county employees; it

12 grants immunity to counties only where the public employee would also be immune.").

13     Here, the public employee of Tulare County, Sheriff Boudreaux, is immune from

14 negligence claims.  "California Government Code section 845.6 applies to prisoners'

15 claims arising from a public employee's failure to provide medical care . . . . Public

16 'employees are immune from claims based on injuries to prisoners caused by a failure to

17 provide medical care, except when an employee, acting within the scope of his

18 employment, fails to provide medical care to a prisoner and has reason to know that

19 need for medical care is immediate.'"  Tandel v. Cnty. of Sacramento, No. 2:11-cv-0353-

20 MCE-AC, 2014 WL 202740, *17 (E.D. Cal. Jan. 17, 2014) (quoting Lawson v. Super. Ct.,

21 180 Cal. App. 4th 1372, 1384 (2010)).  Plaintiffs' claim stems from Defendants' failure to

22 provide medical care.  Because section 845.6 and not general negligence principles

23 apply to this claim, Sheriff Boudreaux is immune from liability on the general negligence

24 claim.  Accordingly, Tulare County cannot be vicariously liable and the negligence claim

25 against Tulare County and Sheriff Boudreaux is DISMISSED.

26

**3.  California Government Code section 845.6 Claim against Tulare County**

27

Plaintiff asserts Defendants violated California Government Code section 845.6

28

16

by failing to provide medical or psychiatric attention to Shaymus, who was known to be in need of immediate care due to an obvious medical or psychological condition. Section 845.6 provides:

> [A] public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

"Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care." Watson v. California, 21 Cal. App. 4th 836, 841 (1993) (holding that there is no "duty to provide reasonable medical care"). Section 845.6 explicitly makes exceptions for failure to diagnose and/or medicate mental illness (Cal. Gov't Code § 855.8), and for failure to confine a person to a mental health institution. Cal. Gov't Code § 856.

Plaintiffs do no plead sufficient facts to show that during his brief time at Tulare County jail, Shaymus was in need of immediate medical care that was not provided by Tulare County employees acting within their scope of employment. Instead, Plaintiffs argue that Defendants should have conducted a mental health evaluation on Shaymus or confined him to an inpatient psychiatric facility. Both of these actions are explicitly exempt from liability under section 845.6. Therefore, the section 845.6 claim against Tulare County must be DISMISSED.

Because the Court finds no viable claims as currently pled against Tulare County and Sheriff Boudreaux, this Motion to Dismiss is GRANTED in its entirety.

**D. Clinical Social Worker Ceballos**

Plaintiffs bring a deliberate indifference claim, a Bane Act claim, and a section 845.6 claim against Ceballos, the social worker who treated Shaymus prior to his detention. Ceballos saw Shaymus on three occasions: first, after Shaymus took an overdose of Klonopin and drank alcohol and was transported to the hospital; second, after Shaymus's second suicide attempt on December 2, 2013; and third, later that same

1  day, when Ceballos placed Shaymus on a 5150 hold in a grocery store parking lot.

2  ### 1.  Bane Act claim and section 845.6 claim against Ceballos

3  As a preliminary matter, Ceballos argues that all state law claims against him

4  should be barred because the initial government tort claim filed pursuant to state law

5  only referenced the incidents that occurred at the jail and did not provide notice that

6  Plaintiffs planned to sue mental health workers who had treated Shaymus prior to his

7  imprisonment.   Plaintiffs counter that because the legal claims are the same as in both

8  the initial government tort claim and the FAC, Tulare County should have been put on

9  notice that Ceballos could be included in the lawsuit.

10  Generally, under California law, no suit for money or damages may be maintained

11  against a governmental entity unless a formal claim has been presented to such entity,

12  and has been rejected.  Cal. Gov't Code §§ 945.4, 912.4.  The policy behind the

13  government tort claim notice requirement is to give a public entity enough information to

14  allow it to adequately investigate and potentially settle the claim before incurring litigation

15  expenses.  See City of San Jose v. Super. Ct., 12 Cal. 3d 447, 455 (1974).  Once the

16  formal claim is rejected, the plaintiff may file suit.  New claims in the lawsuit are properly

17  barred "where there has been a complete shift in allegations, usually involving an effort

18  to premise civil liability on acts or omissions committed at different times or by different

19  persons than those described in the claim. . . ."  Sockett v. Ass'n of Cal. Water Agencies

20  Joint Powers Ins. Auth., 34 Cal. 4th 441, 447 (2004).  Here, the government tort claim

21  describes a chain of events beginning with Shaymus's arrest on December 5, 2013.

22  There is no indication from the government tort claim that Plaintiffs planned to sue Tulare

23  County over treatment that occurred prior to the arrest and detention.  Therefore, the

24  Court finds that Tulare County did not have adequate notice that Ceballos would be

25  included in this litigation.  The state claims against Ceballos can be dismissed for that

26  reason alone.

27  The state claims also fail on the merits.  Plaintiffs have not pled any facts that

28  Shaymus was deprived of a constitutional right by threats, intimidation, or coercion on

1  the part of Ceballos.  If anything, Plaintiffs argue that Ceballos failed to force Shaymus to

2  do something—in-patient mental health treatment—against his will.  Thus, the Bane Act

3  claim should be dismissed.  The section 845.6 claim should also be dismissed as this

4  section pertains only to rights owed to prisoners, and is thus inapplicable to Ceballos's

5  treatment of Shaymus prior to his detention.

6  ## 2.  § 1983 against Ceballos

7      In their federal claim, Plaintiffs argue that Ceballos violated Shaymus's Fourth

8  Amendment right to be free from unreasonable seizure and his Fourteenth Amendment

9  right to medical care as a pre-trial detainee.  However, Ceballos's involvement with

10  Shaymus occurred prior to his custody in either of the two jails.  Plaintiffs argue that the

11  initial involuntary evaluations and the eventual 5150 hold amounted to custody, but can

12  only point to case law regarding criminal suspects in police custody or those that have

13  already been arrested.  See, e.g., Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244

14  (1983).  Plaintiffs do not present any case law to support their argument that the

15  Fourteenth Amendment applies to an involuntary mental health evaluation.

16      The key is whether Shaymus was in state custody when he met with Ceballos.

17  The Court has no difficulty concluding that he was not.  The duty to provide care arises

18  "[w]hen the state by the affirmative exercise of its power so restrains an individual's

19  liberty that it renders him unable to care for himself . . . ."  DeShaney v. Winnebago Cnty.

20  Dept. of Soc. Servs., 489 U.S. 189 (1989).  Shaymus was never detained and was never

21  prevented from seeking other mental health services during his three encounters with

22  Ceballos. Importantly, Plaintiffs' claims are based on the fact that Ceballos did not

23  restrain Shaymus and arrange for inpatient mental health care.  See Pls.' Opp'n., ECF

24  No. 52, at 14 ("Ceballos failed to institute appropriate suicide precautions for

25  Mr. DiGiantomasso, which should have included:  arranging for inpatient mental health

26  care for Mr. DiGiantomasso or requesting a transfer to the V.A. Medical Center inpatient

27  psychiatric unit.").  Thus, he was never in custody for the purposes of these statutes.

28  Even if the Court determined that Shaymus's later 5150 hold constituted custody by the

1   state, it was non-Defendant Dr. Aking who managed after Shaymus's care during the

2   5150 hold, not Ceballos.

3       Therefore, the § 1983 claim against Ceballos must be DISMISSED and

4   Ceballos's Motion to Dismiss is GRANTED in its entirety.

5       **E.  Kings County Defendants**

6       The Kings County Defendants include:  Kings County, Sherriff-Coroner David

7   Robinson ("Sheriff Robinson"), jail Commander Pedreiro, and jail booking Sergeant

8   Henderson.  Sherriff Robinson did not have any direct contact with Shaymus but is

9   responsible for all policies, procedures and training at the jails.  FAC ¶ 13.  The Kings

10  County Defendants argue that Plaintiffs have pled insufficient facts to support their

11  claims for relief under § 1983, Monell, the Bane Act, common law negligence,

12  Government Code section 845.6, and the ADA/RA.  They also argue that Plaintiffs have

13  not demonstrated an actual case or controversy to warrant injunctive or declaratory

14  relief.

15      **1.  § 1983 Claim against Robinson, Pedreiro and Henderson**

16      Defendants first challenge Plaintiffs' § 1983 claims for violations of the First,

17  Fourth and Fourteenth Amendments.  Plaintiffs concede that the Fourteenth

18  Amendment, not the Fourth Amendment, provides the basis for their deliberate

19  indifferent claim.  See Pls.' Opp'n, ECF No. 51, at 9:20-22.  Therefore, Plaintiffs' Fourth

20  Amendment claim under § 1983 is DISMISSED.  Plaintiffs fail to address Defendants'

21  argument that Plaintiffs do not identify an associational interest related to speech and

22  petition that would support a claim under the First Amendment.  See Reyes ex. rel.

23  Reyes v. City of Fresno, No. 1:13-cv-0418-LJO-SKO, 2013 WL 2147023, at *9 (E.D. Cal.

24  May 15, 2013) (the "freedom to associate guaranteed by the First Amendment protects

25  associational interests related to speech and petition").  Therefore, Plaintiffs' First

26  Amendment claim under § 1983 is also DISMISSED.  However, the Court finds that

27  Plaintiffs have pled sufficient facts to support the remaining claims under the Fourteenth

28  Amendment for deliberate indifference and for interference with familial relationships.

1    Because Sheriff Robinson did not have any direct interaction with Shaymus, he

2    can only be sued under the theory of supervisory liability.  Supervisory liability is

3    imposed against a supervisory official "in his individual capacity for his own culpable

4    action or inaction in the training, supervision, or control of his subordinates, for his

5    acquiescence in the constitutional deprivations of which the complaint is made, or for

6    conduct that showed a reckless or callous indifference to the rights of others."  Menotti v.

7    City of Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005) (quoting Larez, 946 F.2d at 646).

8    Sheriff Robinson is liable for actions that set "in motion a series of acts by others which

9    the actor knows or reasonably should know would cause others to inflict the

10   constitutional injury."  Duffy, 588 F.2d at 743-44.

11    Plaintiffs argue that Sheriff Robinson failed to train his employees to recognize the

12   risk of suicide and care for the mentally ill inmates (FAC ¶¶ 75, 86).  Under this failure-

13   to-train theory, Plaintiffs must prove both (1) that Sheriff Robinson was deliberately

14   indifferent to the need to train the staff about how to recognize a suicide risk and the

15   proper care of suicidal or mentally ill inmates and (2) that the lack of training actually

16   caused the harm.  Connick , 131 S. Ct. at 1358.  Plaintiffs have pled sufficient facts to

17   show that Sheriff Robinson should have known the importance of training staff to

18   recognize suicide risks.  Plaintiffs have also sufficiently alleged that had the staff better

19   recognized the risk of suicide in Shaymus's case, the constitutional injury could have

20   been prevented.  Therefore, the Court declines to dismiss Plaintiffs' individual capacity

21   claim against Sheriff Robinson.

22    In regard to the specific Kings County employees who had direct contact with

23   Shaymus (Commander Pedreiro and Sergeant Henderson), Plaintiffs must show that

24   they were "(a) subjectively aware of the serious medical need and (b) failed to

25   adequately respond."  Simmons, 609 F.3d at 1018.  Plaintiffs must also show that

26   Commander Pedreiro and Sergeant Henderson proximately caused the deprivation of a

27   federal protected right.  Leer, 844 F.2d at 634.

28    Defendants counter that Kings County staff members were unaware that

1   Shaymus posed a heightened risk of suicide.  However, based on the facts in the

2   Complaint, the magnitude of risk should have been obvious to Commander Pedreiro and

3   Sergeant Henderson.  Sergeant Henderson knew of Shaymus's recent threats to harm

4   himself while in custody and Commander Pedreiro had seen or been told of the reports

5   that detailed his previous two suicide attempts (which were only eight days apart and

6   just prior to entering the jail), that he was "depressed/tearful" and feeling "hopeless and

7   helpless," that he had previously been under a psychiatrist's care for major depression

8   and panic disorder, and that he had just been released from a 5150 hold.  Shaymus's

9   initial denial at booking of "current suicidal ideation, plan or intent" does not absolve

10  Commander Pedreiro and Sergeant Henderson of responsibility.  As acknowledged by

11  the mental health staff, Shaymus had "no current suicidal ideation but will need close

12  monitoring for any changes to mental state."  FAC ¶¶ 58-59.  Based on the facts, it

13  would appear that Shaymus's suicide risk increased as he remained in jail.  He

14  expressed trouble seeing himself as a detainee and threatened to kill himself if housed

15  with other detainees.  The final, predicable trigger appears to be Shaymus's realization

16  that he was not going to be released by the court on his own recognizance.  Thus,

17  Plaintiffs have pled sufficient facts to show that Kings County staff should have been

18  aware that there was a heightened risk of suicide.

19      Plaintiffs have also pled sufficient facts to show that Commander Pedreiro and

20  Sergeant Henderson failed to institute appropriate suicide precautions for Shaymus,

21  including following the national and state policy outline above regarding frequency of

22  monitoring and providing him with a safety smock and appropriate housing and bedding.

23  Id. at ¶¶ 48, 79.  Thus, Plaintiffs have sufficiently pled that Commander Pedreiro and

24  Sergeant Henderson knew of and disregarded an excessive risk to inmate health and

25  safety by failing to take reasonable measures to abate it.  Defendants' request that the

26  Court dismiss this §1983 claim for deliberate indifference is therefore DENIED.

27      Since Plaintiffs have successfully pled that the Kings County defendants were

28  deliberately indifferent, Plaintiffs have met the pleading standard for their familial

1   association claim as well.  The right to intimate familial relationships is protected by the

2   Fourteenth Amendment, which prevents jail staff from any behavior that "shocks the

3   conscience." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849-50 (1998).  Conduct that

4   is deliberately indifferent to a serious medical need may rise to the level of shocking the

5   conscience. Id.  This is the case when actual deliberation is practical, in other words, the

6   situation does not involve snap judgments. Wilkinson v. Torres, 610 F.3d 546, 554

7   (9th Cir. 2010).  Since the facts as pled show a situation that allowed Defendants to

8   deliberate, Defendants' request to dismiss this claim is DENIED.

9                    **2. Monell Claim against Kings County**

10       Plaintiffs argue that Defendants only attacked the sufficiency of Plaintiffs'

11  supervisory liability claim in their briefing and did not discuss Plaintiffs' municipal liability

12  claim against Kings County.   The Court agrees. See Defs.' Mot. to Dismiss, ECF No.

13  51, at 9-11 (discussing only supervisory liability claims under the heading "Second

14  Cause of Action-Municipal and Supervisory Liability").  Failure to adequately brief an

15  argument amounts to a waiver of that argument. See Aramark Facility Servs. v. SEIU

16  Local 1877, 530 F.3d 817, 924 n.2 (9th Cir. 2008).

17           [M]unicipal and supervisory liability present distinct and
             separate questions that are treated and analyzed as
18           such. . . . Supervisory liability concerns whether supervisory
             officials' own action or inaction subjected the Plaintiff to the
19           deprivation of her federally protected rights. Generally,
             liability exists for supervisory officials if they personally
20           participated in the wrongful conduct or breached a duty
             imposed by law. . . . In contrast, municipal liability depends
21           upon enforcement by individuals of a municipal policy,
             practice, or decision of a policymaker that causes the
22           violation of the Plaintiffs federally protected rights. . . .
             Typically, claims asserted against supervisory officials in both
23           their individual and official capacities provide bases for
             imposing both supervisory liability (the individual claim) and
24           municipality liability (the official capacity claim) if the
             supervisor constitutes a policymaker.
25

26  McGrath v. Scott, 250 F. Supp. 2d 1218, 1222, 1223 (D. Ariz. 2003).

27       While Plaintiffs brought suit against Sheriff Robinson and Commander Pedreiro in

28  both their official and individual capacities, they now concede that their official capacity

                                   23

1  suits are redundant because official-capacity suits in a § 1983 action "generally

2  represent only another way of pleading an action against an entity of which an officer is

3  an agent." Pls.' Opp'n, ECF No. 51, at 14 (quoting Kentucky v. Graham, 473 U.S. 159,

4  166 (1985)). Therefore, the claims against Sheriff Robinson or Commander Pedreiro in

5  their official capacity are DISMISSED and the municipal liability claim under Monell

6  proceeds against Kings County only.

### 3. Bane Act Claim against Kings County, Robinson, Pedreiro and Henderson

Defendants' also properly challenge Plaintiffs' Bane Act claims. Plaintiffs bring a
survival action on behalf of their son and action on behalf of themselves for interference
with right to familial association with their son. Since Plaintiffs have not alleged any facts
that show threats, intimidation, or coercion on the part of Kings County against them,
their claim on behalf of themselves should be dismissed.

The survival action should also be dismissed. Plaintiffs are required to show
threats, intimidation, or coercion that is separate to the constitutional violation. Sanchez,
914 F. Supp. 2d at 1118. "Although a complaint need not use the statutory terms
'threats, intimidation, or coercion,' it must allege facts from which the presence of
threats, intimidation, or coercion may be inferred." Id. Plaintiffs have not pled facts from
which the Court can infer any threats, intimidation, or coercion by an employee of Kings
County against Shaymus prior to his death. Therefore, this claim must be DISMISSED.

### 4. Negligence Claim against Kings County, Robinson, Pedreiro and Henderson

As previously established, Plaintiffs' claim stems from Defendants' failure to
provide medical care and section 845.6, not principles sounding in negligence, apply to
this claim. See Tandel, 2014 WL 202740, at *17. Accordingly, this claim must be
DISMISSED.

///

///

///

1

2

### 5.  California Government Code section 845.6 Claim against Kings County, Pedreiro and Henderson

3          Plaintiffs assert that Defendants violated California Government Code section

4   845.6 by failing to provide medical or psychiatric attention to Shaymus, who was known

5   to be in need of immediate care due to an obvious medical or psychological condition.

6   Plaintiffs point to the fact that Shaymus was never seen by a physician or registered

7   nurse while detained at Kings County.  The only contact Shaymus had with a physician

8   was when a doctor called in a prescription for medication to treat Shaymus's agitation.

9   Defendants argue that section 845.6 "neither encompasses a duty to provide reasonable

10  medical care, nor includes a concomitant duty to assure that prison medical staff

11  properly diagnose and treat the medical condition, nor imposes a duty to monitor the

12  quality of care provided."  Castaneda v. Dep't of Corr. & Rehab., 212 Cal. App. 4th 1051,

13  1072 (2013).   Defendants also argue that it was not obvious that Shaymus was in

14  immediate need of medical care.  See Watson, 21 Cal. App. 4th at 843.  Given the

15  knowledge that Kings County defendants possessed about Shaymus's mental health

16  history and his threats to harm himself while in jail, Plaintiffs have pled sufficient facts to

17  show that it was plausible that Shaymus was in need of immediate medical attention and

18  that Kings County staff failed to summon the appropriate medical care rather than failed

19  to provide reasonable medical care.  Therefore, Defendants' request to dismiss this

20  claim is DENIED.

21                    ### 6.  ADA/RA Claim against Kings County

22          Defendants properly argue that Plaintiffs' ADA/RA claim should be dismissed.

23  Even though Shaymus had a disability (severe depression and an anxiety disorder),

24  Plaintiffs have failed to plead any facts that Shaymus was denied services because of

25  this disability.  Plaintiffs cite to Anderson v. Siskiyou County, 2010 WL 3619821, for the

26  proposition that a municipality can be held liable under the ADA for denying a person

27  with a disability appropriate mental health care states a claim under Title II.  However, in

28  Anderson, the inmate was denied access to a mental health care facility, which the court

1  deemed an "outright denial of medical services" that was so unreasonable it

2  demonstrated the plaintiff was discriminated against because of his disability.  Id. at *5.

3      There was no similar "outright denial of medical services" in this case.  The facts

4  as pled show that Shaymus met with a psychiatric technician, had a mental health

5  assessment, spoke with a marriage and family therapist intern, and had a prescription for

6  agitation called in by a physician.  Moreover, this Court has previously stated that it will

7  not follow Anderson for that proposition and instead follows the precedent set by the

8  Ninth Circuit in Simmons.  See Estate of Bock ex rel. Bock, 2012 WL 423704, at *10.

9      Plaintiffs themselves frame the issue as Kings County excluding Shaymus from

10  participating in the jail's services "by failing to provide competent and appropriate mental

11  health care."  Pls.' Opp'n, ECF No. 51, at 20:3-4.  Inadequate treatment or lack of

12  treatment for Plaintiff's medical condition does not in itself suffice to create liability under

13  the ADA.  Simmons, 609 F.3d at 1021-22; see also Luna v. Cal. Health Care Servs.,

14  2011 WL 6936399 at *5 (E.D. Cal. 2011) ("Plaintiff's allegations of inadequate medical

15  care do not state a claim under the ADA").

16      Because this case involves claims of inadequate mental health care, the facts

17  cannot support an ADA claim and it must be DISMISSED.  As "[t]here is no significant

18  difference in analysis of rights and obligations created by the ADA and Rehabilitation

19  Act," Zukle, 166 F.3d at 1045 n.11, the RA claim is DISMISSED.

20      **7.  Plaintiffs' Request for Injunctive and Declaratory Relief**

21      In their Complaint, Plaintiffs request that the Court order Kings County to change

22  its mental health and suicide prevention policies.  Defendants argue that Plaintiffs'

23  claims for injunctive and declaratory relief should be dismissed because Plaintiffs have

24  been unable to establish standing.  "A plaintiff 'must demonstrate standing separately for

25  each form of relief sought.'"  Lanovaz v. Twinings N. Am., Inc., No. C-12-02646-RMW,

26  2014 WL 46822, *9 (N.D. Cal. Jan. 6, 2014) (quoting Friends of the Earth, Inc. v. Laidlaw

27  Envtl. Servs., Inc., 528 U.S. 167, 185 (2000)).  Standing to seek injunctive relief is

28  established when a plaintiff can show "a real and immediate threat that the plaintiff will

1    be wronged again" in a similar way.  City of L.A. v. Lyons, 461 U.S. 95, 111 (1983).  "[A]

2    case or controversy exists justifying declaratory relief only when the challenged

3    government activity is not contingent, has not evaporated or disappeared, and, by its

4    continuing and brooding presence, casts what may well be a substantial adverse effect

5    on the interests of the petitioning parties."  Feldman v. Bomar, 518 F.3d 637, 642

6    (9th Cir. 2008).

7            Essentially, Defendants argue that Plaintiffs, as residents of Arizona with no

8    children in Kings County, do not have standing for injunctive relief because they cannot

9    show that they will ever be affected by Kings County jail policies regarding treatment of

10   mentally ill or suicidal detainees again.  Nor are their facts in the Complaint which show

11   that there is a live case or controversy requiring declaratory relief because Plaintiffs

12   cannot show that they, or someone closely related to them, are currently being deprived

13   of a constitutional right because of the existing policies in Kings County.

14           While the Court finds these arguments convincing, Plaintiffs should be allowed to

15   further develop the record before the Court eliminates these potential remedies.  See

16   Howard v. City of Vallejo, No. 2:13-cv-01439-KJM-KJN, 2013 WL 6070494, *6-7 (E.D.

17   Cal. Nov. 13, 2013); see also Rodriguez v. Cal. Highway Patrol, 89 F. Supp. 2d 1131,

18   1142 (N.D. Cal. 2000) ("Plaintiffs are entitled to discovery to attempt to establish an

19   evidentiary basis for their claims for injunctive relief.").  Accordingly, Defendants' request

20   to dismiss the claims for injunctive and declaratory relief is DENIED.

21

22                                    **CONCLUSION**

23

24           For the reasons stated above, ECF Nos. 27, 30, 42 and 43 are GRANTED with

25   leave to amend with the exception of the Unruh Act and ADA Title III claims against

26   Corizon, which are dismissed with prejudice.  Additionally, on the Court's own motion,

27   Defendant Corizon, Inc. is DISMISSED.

28   ///

1    ECF No. 37 is GRANTED with leave to amend in part and DENIED in part as

2 follows:

3      1.  With respect to Claim One (§ 1983), the Motion is GRANTED with leave to

4          amend the Fourth and First Amendment claims, but is DENIED as to the

5          Fourteenth Amendment claims.

6      2.  With respect to Claim Two (<u>Monell</u>), the Motion is DENIED as to Kings County.

7      3.  With respect to Claim Three (Bane Act), the Motion is GRANTED with leave to

8          amend.

9      4.  With respect to Claim Four (Negligence), the Motion is GRANTED with leave

10         to amend.

11     5.  With respect to Claim Five (section 845.6), the Motion is DISMISSED.

12     6.  With respect to Claim Six (ADA/RA), the Motion is GRANTED with leave to

13         amend.

14     7.  With respect to Plaintiff's requested declaratory and injunctive relief, the

15         Motion is DENIED.

16     Plaintiffs may, but are not required to, file an amended complaint.[10]  If no

17 amended complaint is filed within twenty (20) days of the date of this Order is

18 electronically filed, the causes of action dismissed by this Order shall be dismissed with

19 prejudice without further notice to the parties.

20     IT IS SO ORDERED.

21 Dated:  May 29, 2015

22

23

24                                    _____
                                     MORRISON C. ENGLAND, JR., CHIEF JUDGE
25                                   UNITED STATES DISTRICT COURT

26

27 _____
       [10] The Court notes for the record that the dismissal as to many of these Defendants and claims
28 were not close calls.  Should Plaintiffs choose to amend their complaint, the Court expects counsel to be
   more discerning in the manner in which they set forth Plaintiffs' claims.